# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| JEREMY PRATT,<br>ROBERT J. RUFFNER, and<br>JOHN TEBBETTS,<br>on their own behalf and<br>on behalf of all others<br>similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>SECURUS TECHNOLOGIES, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:20-cv-00295-JDL |

## MOTION TO DISMISS OF DEFENDANT SECURUS TECHNOLOGIES, LLC
### (f/k/a SECURUS TECHNOLOGIES, INC.)
### <u>AND INCORPORATED MEMORANDUM OF LAW</u>

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 1

II.     STATEMENT OF ALLEGED FACTS .................................... 5

III.    GOVERNING LEGAL STANDARDS ...................................... 7

IV.     ARGUMENT ............................................................................... 9

        A.      Plaintiffs Lack Standing To Bring Their Claims ................................. 9

        B.      Plaintiffs Fail to State a Plausible Claim ........................... 13

V.      CONCLUSION ......................................................................... 19

# TABLE OF AUTHORITES

**Page(s)**

## Cases

*Adams v. City of Battle Creek,*
250 F.3d 980 (6th Cir. 2001) ................................................................. 16

*Allen v. Wright,*
468 U.S. 737 (1984) ............................................................................... 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................... 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 8, 9

*Butera & Andrews v. IBM Corp.,*
No. 1:06-CV-647 (RBW), 2006 U.S. Dist. LEXIS 75318 (D.D.C. Oct.
18, 2006)............................................................................................... 15

*Cavallaro v. U.S.,*
284 F.3d 236 (1st Cir. 2002).............................................................. 2, 10

*Evans v. Skolnik,*
No. 3:08-cv-00353-RCJ-VPC, 2009 U.S. Dist. LEXIS 104430 (D.
Nev. Oct. 2, 2009), *aff'd* 637 F. App'x 285 (9th Cir. 2015) ..................... 5

*Faile v. Maine,*
No. 1:12-CV-00055-JAW, 2012 U.S. Dist. LEXIS 128944, 2012 WL
3990003 (D. Me. Aug. 6, 2012)............................................................... 2

*Fernandez v. Leidos, Inc.,*
127 F. Supp. 3d 1078 (E.D. Cal. 2015)................................................... 2

*Fusco v. Rogers,*
No. 2:18-cv-00290-JAW, 2019 U.S. Dist. LEXIS 51303, 2019 WL
1387686 (D. Me. Mar. 17, 2019)............................................................. 2

*Gonzalez v. United States,*
284 F.3d 281 (1st Cir. 2002)................................................................... 8

*Griffin v. Griffin,*
2014 ME 70, 92 A.3d 1144 ..................................................................... 8

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Gustavsen v. Alcon Labs., Inc.*,
  903 F.3d 1 (1st Cir. 2018).................................................................................... 11

*In re HIPAA Subpoena (Patient Servs.)*,
  961 F.3d 59 (1st Cir. 2020)...................................................................................... 4

*Hochendoner v. Genzyme Corp.*,
  823 F.3d 724 (1st Cir. 2016).................................................................................... 8

*Hunt v. Blackburn*,
  128 U.S. 464 (1888) ................................................................................................. 1

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012).............................................................................. 12, 14

*Kenn v. Eascare, LLC*,
  No. 20-cv-10070-ADB, 2020 U.S. Dist. LEXIS 158820 (D. Mass. Sep.
  1, 2020)................................................................................................................... 12

*Lanza v. New York*,
  370 U.S. 139 (1962) ................................................................................................. 3

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 7, 11

*Lyman v. Baker*,
  954 F.3d 351 (1st Cir. 2020).................................................................................. 11

*Menard v. CSX Transp., Inc.*,
  698 F.3d 40 (1st Cir. 2012)...................................................................................... 8

*Murphy v. United States*,
  45 F.3d 520 (1st Cir. 1995)...................................................................................... 8

*Papasan v. Allain*,
  478 U.S. 265 (1986) ..................................................................................... 8, 10, 14

*In re Pharmatrak, Inc. Privacy Litig.*,
  292 F. Supp. 2d 263 (D. Mass. 2003) ............................................................. 13, 15

*In re Pharmatrak, Inc. Privacy Litig.*,
  329 F.3d 9 (1st Cir. 2003)................................................................... 4, 13, 14, 15

-iii-

# TABLE OF AUTHORITIES
(continued)

**Page**

*Randolph v. Nev. ex rel. Nev. Dep't of Corr.*,
  No. 3:13-cv-148-RCJ-WGC, 2013 WL 5818894
  (D. Nev. Oct. 29, 2013) ........................................................................ 17

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................ 1, 11, 12, 13

*Thayer Corp. v. Reed*,
  No. 2:10-cv-00423-JAW, 2011 U.S. Dist. LEXIS 74229, 2011 WL
  2682723 (D. Me. Jul. 11, 2011) ................................................... 5, 14, 18

*United States v. AVX Corp.*,
  962 F.2d 108 (1st Cir. 1992) ..................................................................... 7

*United States v. Bay State Ambulance & Hosp. Rental Serv.*,
  874 F.2d 20 (1st Cir. 1989) ....................................................................... 9

*United States v. Lewis*,
  406 F.3d 11 (1st Cir. 2005) ............................................................... 16, 17

*United States v. Lowe*,
  948 F. Supp. 97 (D. Mass. 1996) ............................................................. 1

*United States v. Moalin*,
  No. 10-4246, 2013 U.S. Dist. LEXIS 164038, 2013 WL 6079518
  (S.D. Cal. Nov. 18, 2013) ......................................................................... 3

*United States v. Novak*,
  531 F.3d 99 (1st Cir. 2008) ................................................................ 4, 10

*United States v. Rivera*,
  292 F. Supp. 2d 838 (E.D. Va. 2003) ..................................................... 17

*United States v. United Shoe Mach. Corp.*,
  89 F. Supp. 357 (D. Mass. 1950) ........................................................... 11

*United States v. Van Poyck*,
  77 F.3d 285 (9th Cir.1996) ....................................................................... 3

*Williams v. Poulos*,
  11 F.3d 271 (1st Cir. 1993) ..................................................................... 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Yershov v. Gannet Satellite Info. Network, Inc.,*
  204 F. Supp. 3d 353 (D. Mass. 2016) .................................................................. 11


**Statutes**

18 U.S.C. § 2510 ...................................................................................................*passim*

18 U.S.C. § 2511 ...................................................................................................*passim*

18 U.S.C. § 2518 ...................................................................................................*passim*

18 U.S.C. § 2520 ...................................................................................................*passim*

15 M.R.S. § 709 ............................................................................................... 5, 13, 18

15 M.R.S. § 710 ........................................................................................................ 18

**Other Authorities**

Maine Department of Corrections Policy No. 21.3 .................................................. 4, 6

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 9

## I.   __INTRODUCTION__

This case presents a putative class action that the Court should dismiss because the representative plaintiffs both lack standing and fail to plead plausible facts in support of a cognizable claim.

The plaintiffs are themselves three attorneys, Jeremy Pratt, Robert Ruffner and Jack Tebbetts (collectively, "Plaintiffs"). They allege that Securus Technologies, LLC f/k/a Securus Technologies, Inc. ("Securus"), a private telecommunications provider, violated federal and state wiretap laws when it "recorded phone calls between inmates and their attorneys," and then "distributed" the recordings "to jail administrators who are often law enforcers." ECF No. 1 (Compl.) ¶¶ 2 & 15.

Plaintiffs lack standing to bring this claim because the attorney-client privilege exists for the benefit of the client, not the attorney. *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (ordaining that "the privilege is that of the client alone"); *see also, e.g.*, *United States v. Lowe*, 948 F. Supp. 97, 101 (D. Mass. 1996) (ordering the production of otherwise privileged documents and collecting cases to establish that attorneys lack independent standing to assert the attorney-client privilege for themselves). Plaintiffs make no plausible factual allegations of their *clients*' expectations, preservation or assertion of the attorney-client privilege. They accordingly fail to plead any cognizable, "concrete" harm to confer standing to sue on their own behalf. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Plaintiffs' complaint also presumes that the attorney-client privilege applies to all communications between an attorney and client. *See, e.g.,* ECF No. 1 (Compl.) ¶¶

23 & 27-28 (alleging that the attorney-client privilege applies based on the fact that one participant's "voice" in a call was "recognized" as one of Plaintiffs, without regard to the substance of matters discussed in the call). It does not. The First Circuit embraces a detailed, multifactor test to evaluate assertions of the attorney-client privilege. *See Cavallaro v. U.S.*, 284 F.3d 236, 245 (1st Cir. 2002). Among other things, this test requires that Plaintiffs allege that their clients were seeking "legal advice" from counsel, expecting their communications were "made in confidence" and "permanently protected," and the absence of any waiver, for example by consent or participation of a third party. *See id.* Plaintiffs make no plausible factual allegations about any of these critical subjects with respect to the calls in question.

Plaintiffs also do not plausibly plead that any third party ever listened to the substance of the call recordings, instead pleading only that someone from the Maine Attorney General's office "recognized" the "voice" of counsel and turned the recordings over. ECF No. 1 (Compl.) ¶¶ 23 & 27.[1] Without listening to the substance, and determining that it contained confidential communications, there is no invasion of the attorney-client privilege and thus no standing to sue. *See Fernandez v. Leidos,*

---

[1] Plaintiffs separately equivocate about whether any third parties even "listened to the calls or downloaded them for later listening." ECF No. 1 (Compl.) ¶ 25. Plaintiffs also append "a redacted list" of calls that includes some sort of identifying information in a column titled, "Playback," but it is "not clear whether [the Court] should construe the exhibits as allegations within the Complaint or as exhibits confirming or expanding upon the allegations in the Complaint." *Fusco v. Rogers*, No. 2:18-cv-00290-JAW, 2019 U.S. Dist. LEXIS 51303, at *1 n.1, 2019 WL 1387686 (D. Me. Mar. 17, 2019). Either way, the attachment raises more questions than it answers, leaving unclear the identity of any call participants, the identity of the supposed listener, and perhaps most importantly whether this listener completed the playback and thus heard the substance of the call, or stopped promptly after recognizing the voice of an attorney. In these circumstances, the Court cannot "plausibly infer from [a plaintiff's] allegations or from his attached exhibits" the required elements to plead a viable claim. *Faile v. Maine*, No. 1:12-CV-00055-JAW, 2012 U.S. Dist. LEXIS 128944, at *18, 2012 WL 3990003 (D. Me. Aug. 6, 2012).

*Inc.*, 127 F. Supp. 3d 1078, 1088 (E.D. Cal. 2015) (rejecting Article III standing based on alleged breach of confidentiality arising from data tapes of personally identifiable information because "[i]f no one has viewed your private information . . . then your privacy has not been violated") (quoting *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014)); *cf. United States v. Moalin*, No. 10-4246, 2013 U.S. Dist. LEXIS 164038, at *25, 2013 WL 6079518 (S.D. Cal. Nov. 18, 2013) (deeming the collection of data by electronic phone surveillance not to violate the Fourth Amendment if no one listens to the conversations).

The complaint also does not plausibly allege Plaintiffs or their clients took basic steps to protect any purported privilege. It is well established, and a standard Maine Department of Corrections policy, that "[a]ll telephone calls made on the prisoner phone system, except for privileged calls, may be recorded." Request for Judicial Notice ("RJN"), Ex. 1, "Maine Dep't of Corrections Policy ("DOC Policy") No. 21.3," Procedure F ¶ 1; *see* 34-A M.R.S. § 1403 (authorizing the Maine Commissioner of Corrections to promulgate the DOC Policy); *see also id.* § 1208 ("Each county and municipal detention facility shall, unless granted a variance pursuant to subsection 5, comply with the mandatory standards established by the commissioner.").[2] Thus, Plaintiffs do not complain about the practice of recording generally—only that Securus "failed to screen out Attorney-Client privileged calls." ECF No. 1 (Compl.) ¶

---

[2] Although different procedures, promulgated by other authorities, may apply to the county jails identified in Plaintiffs' complaint, inmates of all stripes surrender their general privacy rights. *See Lanza v. New York*, 370 U.S. 139, 143 (1962) (noting that "[i]n prison, official surveillance has traditionally been the order of the day," and the same holds true for jails, as "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room"); *see also United States v. Van Poyck,* 77 F.3d 285, 290-1 (9th Cir.1996) ("[N]o prisoner should reasonably expect privacy in his outbound telephone calls.").

15. In so doing, Plaintiffs do not plead that their incarcerated clients ever bothered to "designate, in writing, those names and numbers to which the prisoner wishes to make legal telephone calls." RJN, Ex. 1 (DOC Policy No. 21.3), Procedure B ¶ 2. Nor do they plead any facts demonstrating that their clients took steps necessary to protect their privilege, rather than waive it.

Without any allegations that these nonparty inmates took such steps, Plaintiffs do not plausibly plead either: (1) that their clients' privilege was preserved, rather than waived, or (2) how Securus could even have identified (and then screened out) privileged calls without the necessary information to do so. The failure to allege steps taken to protect the confidential nature of the calls renders any violation implausible, as Plaintiffs' clients may simply have waived the privilege or consented to call monitoring and recording.[3] *See, e.g., United States v. Novak*, 531 F.3d 99, 103 (1st Cir. 2008) ("Holyoke initiated telephone calls to [his lawyer] Novak and discussed sensitive legal issues, despite the fact that every call he initiated started with a recording stating that the call was subject to monitoring and recording. Under these circumstances, we hold that Holyoke consented to monitoring of his calls.").

Moreover, Plaintiffs' allegation that Securus "failed to screen" for privilege, ECF No. 1 (Compl.) ¶ 15, is inconsistent with any notion that it "intentionally" targeted privileged calls for recording and distribution, as the federal Wiretap Act requires. 18 U.S.C. § 2511; *see also In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9,

---

[3] The complaint conspicuously fails to allege that any calls were recorded without Plaintiffs' or their clients' consent, which—if provided—would be a complete defense to liability. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept a wire, oral, or electronic communication . . . where one of the parties to the communication has given prior consent to such interception.").

23 (1st Cir. 2003) (explaining that "inadvertent interceptions are not a basis for criminal or civil liability" under the federal Wiretap Act). Plaintiffs fail as well to plead that Securus made the call recordings "outside the ordinary course of business." 18 U.S.C. § 2510(5)(a); *see also* 15 M.R.S. § 709(3). The acts described in the complaint thus fall outside both the federal and Maine wiretap laws. *See* 18 U.S.C. § 2520; *see also Thayer Corp. v. Reed*, No. 2:10-cv-00423-JAW, 2011 U.S. Dist. LEXIS 74229, at *15-16, 2011 WL 2682723 (D. Me. Jul. 11, 2011) (looking to federal law to properly construct Maine's state counterpart).

Each of these reasons, further explained below, warrants this Court's dismissal of Plaintiffs' complaint against Securus.

## II.   <u>STATEMENT OF ALLEGED FACTS</u>

Plaintiffs are criminal defense attorneys. ECF No. 1 (Compl.) ¶¶ 18, 26. They generally allege that "Securus entered into contracts with Maine jails to provide telecommunications services for inmates." *Id.* ¶ 12; *see also id.* ¶ 2. Because prisons and jails in Maine may generally record the phone conversations of inmates, Plaintiffs complain only that "Securus failed to screen out Attorney-Client privileged calls, and then . . . intercepted these calls and distributed them to jail administrators who are often law enforcers." *Id.* ¶ 15. Plaintiffs aver that "these recorded calls between an inmate and their attorney have often been turned over to the office of the Maine Attorney General and, upon information and belief, local District Attorneys responsible for criminal proceedings involving the inmate." *Id.* ¶ 3. They do not identify any factual basis for the pleaded information and belief.

Plaintiffs characterize the described activity as "illegal[]."*Id.* ¶ 15. But they tellingly fail to make any allegations of steps taken by the nonparty inmates to "designate, in writing, those names and numbers to which the prisoner wishes to make legal telephone calls," or otherwise. RJN, Ex. 1 (DOC Policy No. 21.3), Procedure B ¶ 2; *see id.*, Procedure B ¶ 1 (explaining that a "legal phone call" is "also called a privileged phone call"). For that matter, Plaintiffs fail to allege *any* steps that *Plaintiffs* took on behalf of their inmate clients to assure that the facilities housing them—let alone Securus—were aware of what phone calls (or even, more broadly, phone numbers) should be designated as private to exempt them from the usual, lawful monitoring of inmate calls. Plaintiffs also fail to allege facts to support a plausible notion that Securus intentionally targeted their calls for recording with knowledge that the attorney-client privilege applied to those calls. Instead, Plaintiffs simply plead becoming aware of some recorded calls, about which no one apparently took steps to avoid having recorded, and the content of which is left unspecified.

Plaintiffs Tebbetts and Ruffner thus allege simply that the Maine Attorney General's office contacted them in May 2020 with copies of an unspecified number of recordings and a request that *Plaintiffs* "screen out privileged calls," if any. ECF No. 1 (Compl.) ¶¶ 18-25. Plaintiff Pratt similarly alleges that the Maine Attorney General's office contacted him in April 2020 with a copy of a single recorded call; he "was not informed if other calls with his client had been recorded or reviewed." *Id.* ¶¶ 26-29. These allegations suggest the Maine Attorney General's office did more to protect the privilege of Plaintiffs' clients than either Plaintiffs or their clients.

Regardless, the complaint contains insufficient allegations from which to conclude that any of the referenced call recordings plausibly include privileged content. All Plaintiffs offer is the conclusory assertion that "Plaintiff Tebbetts and personnel in Tebbetts' office . . . have confirmed that several [recordings] are protected by the Attorney-Client privilege." ECF No. 1 (Compl.) ¶ 24. Even assuming these conversations—or those involving the other Plaintiffs—bear some indicia of privilege, the complaint fails to allege facts plausibly showing that Plaintiffs or their clients ever acted to protect the privilege. Nor does the complaint contain allegations of concrete injury to anyone resulting from the recordings of calls, particularly as the complaint does not even allege that third parties actually listened to the calls beyond identifying Plaintiffs' voices. *See id.* ¶¶ 23 & 27.

Despite these omissions, Plaintiffs pursue claims under Maine and federal wiretap laws, seeking both damages and injunctive relief. *Id.* ¶¶ 4, 51-52, 56.

## III.   <u>GOVERNING LEGAL STANDARDS</u>

This Court should dismiss a case if it lacks jurisdiction over its subject matter. Fed. R. Civ. P. 12(b)(1). "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). This limit on judicial power requires standing for litigants to invoke a federal court's subject matter jurisdiction and is fundamental to the justiciability of the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) ("If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits").

"[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)); *see also Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (explaining that a plaintiff must establish "sufficient factual matter to plausibly demonstrate his standing to bring the action . . . . Neither conclusory assertions nor unfounded speculation can supply the necessary heft."). In deciding a Rule 12(b)(1) motion, federal district courts may consider exhibits and other documents outside the pleadings. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

Even if standing exists, Plaintiffs must still plead a plausible claim to survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may likewise disregard any "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Plaintiffs may also not employ "information and belief" pleadings to conceal their speculation about facts a reasonable investigation would uncover. *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45-46 (1st Cir. 2012).

Moreover, even if a legal theory appears cognizable and the factual allegations are detailed, when such "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," they still fail to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is "plausible" and therefore cognizable only if it offers more than the "possibility that a defendant has acted unlawfully" or is "'merely

8

consistent with' a defendant's liability." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs Lack Standing To Bring Their Claims**

Plaintiffs' complaint begins by touting the attorney-client privilege and the interests it serves. ECF No. 1 (Compl.) ¶ 1. These uncontroversial points distract from Plaintiffs' failure to acknowledge that "[t]he burden of proving the existence of the privilege is on the party asserting the privilege." *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989). Plaintiffs' complaint assumes the privilege exists in this case, but fails to allege the most basic facts from which one could plausibly infer that the privilege plausibly attached to any of the recorded conversations or that anyone plausibly violated the privilege.

Exemplary of this point is the complaint's suggestion that all conversations between an attorney and client "in which the [client] sought legal advice" are "protected by the Attorney-Client privilege." ECF No. 1 (Compl.) ¶¶ 19-20. That is not the law. The First Circuit embraces a multi-prong test articulated by Professor Wigmore, who explained that the attorney-client privilege applies only as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro*, 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)). Plaintiffs tellingly do not allege facts regarding any of these eight considerations about the allegedly recorded calls.

To begin with, Plaintiffs allege no facts about the substance of the recorded conversations whatsoever, and instead merely note that the "voice" of counsel was "recognized." ECF No. 1 (Compl.) ¶¶ 23 & 27. They assert that one of the Plaintiffs and some colleagues have since purportedly "confirmed that several [recordings of calls] are protected by the Attorney-Client privilege." (*Id.* ¶ 24). But this is the paradigmatic, improper "legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. The complaint makes no plausible, factual allegations that any recordings even reflect the solicitation of legal advice—and that is just the first of the eight factors required by the First Circuit.

The complaint likewise makes no allegations that Plaintiffs' clients expected they were engaging in the conversations in confidence, or that such confidence would enjoy permanent protection. They make no allegations ruling out consent or waiver. Indeed, despite basic means to alert Securus and the carceral facility housing the inmates of the privileged nature of the calls so they would not be recorded—*i.e.* telling someone in advance—the complaint fails to mention any steps taken by Plaintiffs or their clients to do so. Without even one of these important aspects of the privilege, it does not plausibly apply to shield any of the recorded conversations or avoid waiver. *See, e.g., Novak*, 531 F.3d at 103 (finding consent when an inmate spoke to his counsel by phone despite warnings audibly played at the beginning of his calls).

Plaintiffs also exclude from their narrative a critically important limitation on the attorney-client privilege—that it exists for the benefit of the client, not the attorney. *Hunt*, 128 U.S. at 470; *see also United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950) (describing the privilege as a "rule which allows a *client* to prevent the disclosure of information which he gave to his attorney for the purposes of securing legal assistance") (emphasis added). Without factual allegations about their clients' wishes regarding these purportedly privileged calls, Plaintiffs do not allege a plausible claim that the privilege even applies in this case.

These realities expose a fundamental problem for Plaintiffs—their lack of standing to sue. "To satisfy the 'irreducible constitutional minimum' of Article III standing, . . . the plaintiff bears the burden of establishing that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 358 (D. Mass. 2016) (quoting both *Lujan*, 504 U.S. at 560, and *Spokeo*, 136 S. Ct. at 1547).

The invasion of a legally protected interest that is both concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical is an injury-in-fact. *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020). To be particularized, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Although the violation of a procedural right may constitute an injury, *Spokeo*, 136 S. Ct. at 1544, a "bare procedural violation" is not, *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 8 (1st Cir. 2018) (quoting *Hochendoner v.*

*Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016)); *see also Spokeo*, 136 S. Ct. at 1543 ("A plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it.").

In this case, Plaintiffs do not allege facts sufficient to support a plausible claim of privilege. Indeed, they do not allege that the recorded calls reflect even the solicitation or any legal advice or that any third party ever listened to such a request or a response by counsel disclosing such advice. Quite to the contrary, the complaint alleges that when the Maine Attorney General's office recognized voices of certain Plaintiffs, they provided the recordings to Plaintiffs so that *they* could "screen out privileged calls," if any. ECF No. 1 (Compl.) ¶ 22. Far from alleging facts demonstrating that any concrete harm occurred, their allegations constitute implausible equipoise, just as easily supporting the conclusion that no harm occurred whatsoever. *See Katz v. Pershing, LLC*, 672 F.3d 64, 73 (1st Cir. 2012) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.").

In this regard, Plaintiffs' allegations are similar to the claims recently rejected by the court in *Kenn v. Eascare, LLC*, No. 20-cv-10070-ADB, 2020 U.S. Dist. LEXIS 158820 (D. Mass. Sep. 1, 2020). In that case, the plaintiff commenced a putative class action alleging that the defendant had invaded her privacy rights (and those of others) by running background checks during its hiring process. *Id.* The court rejected the claim "[b]ecause Plaintiff consented to the report and has not sufficiently pled

that she suffered an informational injury in that she misunderstood the form . . . or subsequent authorization." *Id.* at *18.

Although the subject matter of this case is somewhat different than *Kenn*, the Court should reach the same result. That is, even if Plaintiffs could establish a "statutory violation" of the federal or state law wiretap claims they assert, Plaintiffs lack standing in this forum, because "Article III standing requires a concrete injury even in the context of a statutory violation," and a "bare procedural violation, divorced from any concrete harm" is insufficient. *Spokeo*, 136 S. Ct. at 1549. They do not allege facts supporting the plausible existence of privilege in the recorded calls, that their clients took steps to protect and preserve that privilege, or that anyone violated the (purported) privilege in any way causing Plaintiffs some concrete harm. The Court should accordingly dismiss Plaintiffs' case for lack of subject matter jurisdiction.

### B.      Plaintiffs Fail to State a Plausible Claim

Plaintiffs allege violations of both the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.,*[4] and the equivalent Maine statute, 15 M.R.S. § 709 *et seq.* Each claim fails for numerous deficiencies in pleading. Among other things, civil liability demands that "the unlawful interception must have been intentional." *In re Pharmatrak, Inc. Privacy Litig.*, 292 F. Supp. 2d 263, 266 (D. Mass. 2003) (citing 18 U.S.C. § 2511(1)(a)); *see also In re Pharmatrak, Inc. Privacy Litig.,* 329 F.3d at 18 ("[I]nadvertent

---

[4] Congress passed the Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848, with the intent to afford privacy protection to certain electronic communications. Title I of the ECPA amended the federal Wiretap Act, which previously addressed only wire and oral communications, to "address[]the interception of . . . electronic communications." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3557. Title II of the ECPA created the Stored Communications Act ("SCA"), which was designed to "address[] access to stored wire and electronic communications and transactional records."

interceptions are not a basis for criminal or civil liability."); *Thayer Corp.*, 2011 U.S. Dist. LEXIS 74229, at *13 (explaining that Maine courts have "regard[ed] the statutory meaning of 'intentionally' as consistent with the federal analogs").

Importantly, the First Circuit has observed that the legislative history of the ECPA reveals that its use of "the term 'intentional' is narrower than the dictionary definition of 'intentional.'" *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d at 23 (quoting S. Rep. No. 99-541, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577) "'Intentional' means more than that one voluntarily engaged in conduct or caused a result. ***Such conduct or the causing of the result must have been the person's conscious objective***." *Id.* (emphasis added). In other words, an allegation tantamount to averring that a defendant "'should have known' . . . is not sufficient to adequately establish the intent necessary to find a [Wiretap Act] violation." *In re HIPAA Subpoena (Patient Servs.),* 961 F.3d 59, 66 (1st Cir. 2020).

Plaintiffs generally assert that Securus "intentionally" intercepted and disclosed privileged conversations. ECF No. 1 (Compl.) ¶¶ 50, 54-55. But this is a mere "legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. It cannot survive a motion to dismiss. *Katz*, 672 F.3d at 73. Additionally, these allegations about Securus' intent are confusingly vague as to whether Plaintiffs contend that Securus intentionally recorded all calls of inmates or somehow targeted for recording calls it knew to be privileged. Either way, there are no plausible, supporting facts.

14

Separately, Plaintiffs' conclusory assertion of intent is contrary to their central factual allegation that "Securus *failed* to screen out Attorney-Client privileged calls." ECF No. 1 (Compl.) ¶ 15 (emphasis added). By pleading their claim in this manner, Plaintiffs contend that Securus did not act when it should have; whether they mean to characterize this omission as "negligence, or even gross negligence[, n]either is sufficient to satisfy the specific intent requirement under the EPCA." *In re Pharmatrak, Inc. Privacy Litig.*, 292 F. Supp. 2d at 268.

In either case, Plaintiffs fail to allege facts plausibly revealing a "conscious objective" by Securus to record and distribute privileged calls. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d at 23; *see also, e.g., Evans v. Skolnik*, No. 3:08-cv-00353-RCJ-VPC, 2009 U.S. Dist. LEXIS 104430, at *13-16 (D. Nev. Oct. 2, 2009) (dismissing federal Wiretap Act claim premised on conclusory allegations that defendants "intentionally" intercepted his attorney-client telephone calls), *aff'd* 637 F. App'x 285, 287 (9th Cir. 2015); *Butera & Andrews v. IBM Corp.*, No. 1:06-CV-647 (RBW), 2006 U.S. Dist. LEXIS 75318, at *14 (D.D.C. Oct. 18, 2006) (dismissing case lacking allegations that defendant's interception of plaintiff's electronic communications was intentional); *cf. Greenfield v. Kootenai* County, 752 F.2d 1387 (9th Cir. 1985) (holding routine recordings of incoming calls was not a violation of federal wiretap laws).[5]

---

[5] A focus on the alleged interception or distribution of the recorded calls rather than the making of recordings makes no legal difference. "[A] person has not committed a disclosure or use violation under [the Wiretap Act] unless s/he 'knew or had reason to know that the interception itself was in violation of [the Wiretap Act].'" *Williams v. Poulos*, 11 F.3d 271, 284 (1st Cir. 1993) (quoting *United States v. Wuliger*, 981 F.2d 1497, 1501 (10th Cir. 1992)) (alterations added). The complaint does not plausibly allege facts to support these requirements.

Indeed, Plaintiffs allege no facts to plausibly suggest that Securus did anything outside the ordinary scope of its business when its systems passively recorded calls made on jailhouse phones. This omission is critical because the federal Wiretap Act provides that "it shall not be unlawful for an . . . electronic communications service . . . to intercept, disclose, or use that communication in the normal course of its employment while engaged in any activity which is a necessary incident to the rendition of its service." 18 U.S.C. §2511(2)(a)(ii). Because Plaintiffs have not alleged that Securus took any actions outside of its "normal course of employment" as a telephone service contractor for Maine carceral facilities that were not "necessary incidents to the rendition of its service," it cannot be liable for a violation of the Act.

This omission is also important because the federal Wiretap Act provides an exception to liability for equipment being used by "an investigative or law enforcement officer in the ordinary course of his duties."[6] 18 U.S.C. § 2510(5)(a)(ii). The "routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute" for precisely this reason, as numerous courts have recognized. *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001); *see also, e.g., United States v. Lewis*, 406 F.3d 11, 18 (1st Cir. 2005) (collecting cases and "join[ing] our sister circuits").

The federal Wiretap Act even specifically recognizes that an "interception under this chapter may be conducted in whole or in part by Government personnel,

---

[6] To establish liability under Title III of the ECPA, the interception must have been "through the use of any electronic, mechanical, or other device." 18 U.S.C. §§ 2510(4), 2511(1). Law enforcement officers operating in the ordinary course of their duties are not using a "device" for purposes of the ECPA. *Id.*

*or by an individual operating under a contract with the Government*, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception." 18 U.S.C. § 2518(5) (emphasis added). Courts thus routinely extend the law enforcement exception to protect private contractors as long as they acted "exclusively under the direction of . . . prison officials . . . did not listen to or monitor the calls; [and did not] have any discretion concerning which calls to record." *United States v. Rivera*, 292 F. Supp. 2d 838, 843 (E.D. Va. 2003); *see also, e.g., Randolph v. Nev. ex rel. Nev. Dep't of Corr.*, No. 3:13-cv-148-RCJ-WGC, 2013 WL 5818894 at *5-64 (D. Nev. Oct. 29, 2013) (granting prison telephone contractor's motion to dismiss with prejudice despite recording attorney-client privileged calls because of the law enforcement exception).

Tellingly, Plaintiffs plead facts that *support* the exception's application to Securus. Specifically, they aver that Securus operated "under contract with county jails in Maine," and allege no facts to suggest that Securus was anything more than an instrumentality of county officials. ECF No. 1 (Compl.) ¶ 2. They do not allege that Securus listened to the calls, enjoyed discretion to choose which calls to record, singled out any inmate calls for recording, or otherwise. Under the alleged facts, Securus' conduct was part of a practice to "routinely monitor inmates' conversations" and occurred in the ordinary course of a law enforcement officer's duties, thereby exempting it from the federal Wiretap Act. *Lewis*, 406 F.3d at 18 (citation omitted).

In step with its federal counterpart, the Maine Wiretap Act excludes from liability monitoring conducted by "a jail investigative officer or a jail employee acting

at the direction of a jail investigative officer, carrying out practices otherwise permitted by this chapter." 15 M.R.S. § 710. The definition of "jail investigative officer" under the Maine statute includes "an employee of a jail" with "the authority to conduct investigations of crimes relating to the security or orderly management of the jail." 15 M.R.S. § 709(4-B). Just as federal courts have interpreted the Wiretap Act, so too should its Maine counterpart be interpreted to permit a government contractor such as Securus to qualify for the jail investigative officer exception. *See Thayer Corp.*, 2011 U.S. Dist. LEXIS 74229, at *13. Regardless, pleaded inadvertence of any privilege violation cannot support liability under the Maine statute. *Id.*

The jail call recordings about which Plaintiffs complain do not qualify for protection under the Maine Wiretap Act, in any event, because they are not "intercept[ed] . . . wire or oral communication[s]" for purposes of the Act. 15 M.R.S. § 710(1). "An '[i]ntercepting device' means 'any device or apparatus which can be used to intercept a wire or oral communication' *other than* (1) a telephone or telegraph instrument, equipment or facility or component thereof used by *a communication common carrier in the ordinary course of its business* . . . . 15 M.R.S. § 709(3)." *Griffin v. Griffin*, 2014 ME 70, ¶19 n.4, 92 A.3d 1144 (emphases added); *see also* 15 M.R.S. § 709(1) (defining "[c]ommunication common carrier" as "any telephone or telegraph company"). Because Plaintiffs do not allege that Securus did anything outside the ordinary scope of its business pursuant to contract when it recorded the jail calls at issue, *see* ECF No. 1 (Compl.) ¶ 2, their Maine Wiretap Act claim necessarily fails.

## V.   <u>CONCLUSION</u>

For all the foregoing reasons, Securus respectfully requests that the Court grant its motion to dismiss in its entirety. Plaintiffs have no standing to sue and their pleading fails to allege facts that support a plausible claim under either the federal or Maine wiretap laws.


Dated:   October 15, 2020                    Respectfully submitted,


                                             */s/ Rebecca Gray Klotzle*
                                             Rebecca Gray Klotzle
                                             CURTIS THAXTER LLC
                                             One Canal Plaza, Suite 1000
                                             P.O. Box 7320
                                             Portland, ME 04112-7320
                                             Tel: 207-774-9000
                                             Email: rklotzle@curtisthaxter.com
                                                     service@curtisthaxter.com

                                             Admitted *Pro Hac Vice*:
                                             Adam R. Fox (CABN 220584)
                                             Gabriel Colwell (CABN 216783)
                                             Marisol C. Mork (CABN 265170)
                                             Squire Patton Boggs (US) LLP
                                             555 South Flower Street, 31st Floor
                                             Los Angeles, California 90071
                                             Telephone: (213) 624-2500
                                             Email: adam.fox@squirepb.com
                                                     gabriel.colwell@squirepb.com
                                                     marisol.mork@squirepb.com

                                             *Counsel for Defendant*
                                             *Securus Technologies, LLC*
                                             *f/k/a Securus Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause an electronic notice to be sent to all registered counsel of record.

Dated:   October 15, 2020          */s/ Rebecca Gray Klotzle*
                                    Counsel for Defendant
                                    Securus Technologies, LLC,
                                    f/k/a Securus Technologies, Inc.