# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| JEREMY PRATT,<br>ROBERT J. RUFFNER,<br>JOHN TEBBETTS, STEVEN<br>BELLEAU, and<br>MATTHEW PERRY<br>on their own behalf and<br>on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURUS TECHNOLOGIES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:20-cv-00295-JDL |

---

## OPPOSITION OF SECURUS TECHNOLOGIES LLC (f/k/a SECURUS TECHNOLOGIES, INC.) TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

---

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL BACKGROUND ......................................................... 1

III.    GOVERNING LEGAL STANDARDS ............................................................... 4

IV.     ARGUMENT ....................................................................................................... 5

        A.      Plaintiffs Are Not Likely To Prevail On The Merits. ........................... 5

        B.      Plaintiffs Make No Showing Of Irreparable Harm. ............................ 10

        C.      The Balance of Harms Favors Securus. ............................................... 13

        D.      Denial Of Plaintiffs' Motion Serves The Public's Interest. ................ 14

        E.      Plaintiffs Fail To Show Good Cause To Expedite Discovery. ............ 15

V.      CONCLUSION .................................................................................................. 16

        CERTIFICATE OF SERVICE .......................................................................... 18

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Am. Postal Workers Union v. Frank*,
    968 F.2d 1373 (1st Cir. 1992) .......................................................................................6

*Animal Welfare Inst. v. Martin*,
    588 F. Supp. 2d 70 (D. Me. 2008) ...............................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................13

*Asseo v. Pan Am. Grain Co.*,
    805 F.2d 23 (1st Cir. 1986) ............................................................................................5

*Barendt v. Gibbons*,
    No. 3:08-CV-161-LRH (RAM), 2009 U.S. Dist. LEXIS 83333 (D. Nev. Jun.
    4, 2009) .........................................................................................................................14

*Cavanaugh v. Looney*,
    248 U.S. 453 (1919) ........................................................................................................4

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
    370 F.3d 151 (1st Cir. 2004) ........................................................................................10

*Collins v. Kennebec County Jail*,
    No. 1:12-cv-00069-GZS, 2012 U.S. Dist. LEXIS 38714, 2012 WL 987328 (D.
    Me. Mar. 21, 2012) .......................................................................................................13

*Corp. Techs., Inc. v. Harnett*,
    731 F.3d 6 (1st Cir. 2013) ..............................................................................................5

*Friends of Merrymeeting Bay v. Nextera Energy Res., LLC*,
    No. 2:11-cv-38-GZS, 2013 U.S. Dist. LEXIS 61240, 2013 WL 1835379 (D.
    Me. Apr. 30, 2013) ........................................................................................................10

*Fund For Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1976) .....................................................................................11

*Gilday v. Dubois*,
    124 F.3d 277 (1st Cir. 1997) ..........................................................................8, 13, 14, 15

*Gray v. Cummings*,
    917 F.3d 1 (1st Cir. 2019) ..............................................................................................6

*Griffin v. Hillsborough Cnty. Dep't of Corr.*,
    No. 13-cv-539-SM2015 U.S. Dist. LEXIS 40331, 2015 WL 1457628 (D.N.H.
    Mar. 30, 2015).................................................................................................15

*Huff v. CoreCivic, Inc.*,
    No. 17-2320-JAR-JPO, 2018 U.S. Dist. LEXIS 35195, 2018 WL 1175042 (D.
    Kan. Mar. 5, 2018).........................................................................................13

*Isaacs v. Trs. of Dartmouth College*,
    No. 17-cv-040-LM, 2017 U.S. Dist. LEXIS 148897, 2017 WL 4119611, * 5
    (D.N.H. Sep. 14, 2017)...................................................................................11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
    295 F. Supp. 2d 366 (S.D.N.Y. 2003)............................................................10

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)............................................................................11

*L.L. Bean, Inc. v. Bank of America*,
    630 F. Supp. 2d 83 (D. Me. 2009) ..................................................................4

*Laughlin v. Orthofix Int'l, N.V.*,
    293 F.R.D. 40 (D. Mass. 2013).......................................................................15

*Los Angeles v. Lyons*,
    461 U.S. 95, 111 (1983)...................................................................................7

*Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of
    Emergency Preparedness*,
    649 F.2d 71 (1st Cir. 1981)..............................................................................4

*McGuire v. Reilly*,
    260 F.3d 36 (1st Cir. 2001)..............................................................................4

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)........................................................................................12

*Mullins v. City of New York*,
    626 F.3d 47 (2d Cir. 2010)...............................................................................6

*Munaf v. Geren*,
    553 U.S. 674 (2008).........................................................................................3

*In re Pharmatrak, Inc. Privacy Litig.*,
    329 F.3d 9 (1st Cir. 2003)...............................................................................10

*Romero v. Securus Techs., Inc.*,
No. 16cv1283 JM (MDD), 2020 U.S. Dist. LEXIS 217489, 2020 WL
6799401 (S.D. Cal. Nov. 19, 2020) ...........................................................13

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
102 F.3d 12 (1st Cir. 1996) ..........................................................................5

*St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*,
275 F.R.D. 236 (S.D. Tex. 2011) ................................................................16

*United States v. Novak*,
531 F.3d 99 (1st Cir. 2008) ...........................................................................9

*Weaver v. Henderson*,
984 F.2d 11 (1st Cir. 1993) ...........................................................................5

*In re WebSecure, Sec. Litig.*,
No. 97-10662-GAO, 1997 U.S. Dist. LEXIS 19600, 1997 WL 770414 (D.
Mass. Nov. 26, 1997) ..................................................................................16

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ......................................................................................4

*Wilson v. Brown*,
No. 05-cv-1774-BAS-MDD, 2015 U.S. Dist. LEXIS 166443 (S.D. Cal. Dec.
11, 2015) .......................................................................................................7

*Winter v. National Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ..........................................................................................4

**Statutes**

18 U.S.C. § 3626(a)(2) .......................................................................................14

Federal Rule of Civil Procedure 26(b)(1) ..........................................................15

Federal Rule of Civil Procedure 26(f) ...............................................................15

**Other Authorities**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d
ed. 1995) ........................................................................................................4

## I.    <u>INTRODUCTION</u>

Nearly four months after commencing this lawsuit, Plaintiffs seek a preliminary injunction, and—by separate motion—expedited discovery aimed at justifying such relief. ECF Nos. 32, 33.  Plaintiffs' delay in filing these motions, coupled with their failure to identify any reason for the delay, undermines both motions. Their timing is also suspect because it comes while Plaintiffs' (already once amended) complaint confronts a motion to dismiss. More fundamentally, Plaintiffs fail to support many of the arguments in their motions with any evidentiary facts or governing case law. Indeed, a close examination of the evidence exposes the motions as literally baseless. For these reasons, explained further below, the Court should deny both motions.

## II.    <u>RELEVANT FACTUAL BACKGROUND</u>

On August 13, 2020, Plaintiffs commenced this action by filing a complaint naming as a defendant Securus Technologies LLC ("Securus"). ECF No. 1. The gravamen of this complaint was that "Securus, under contract with county jails in Maine, intercepted and recorded phone calls between inmates and their attorneys, violating the sanctity of the Attorney-Client privilege." *Id.* ¶ 2. Plaintiffs also alleged that Securus "often . . . turned over" such recordings to prosecutors, and proclaimed that these practices violate federal and Maine wiretap statutes. *Id.* ¶¶ 3-4. Importantly, Plaintiffs assert in their recently filed motions that Securus has engaged in these practices "over the course of years." ECF No. 32 at 5.

Following service of the complaint, on October 15, 2020, Securus timely filed both a motion to dismiss and a motion to strike the class allegations. ECF Nos. 14 &

16. Plaintiffs elected not to defend their original pleading and on November 5, 2020, instead filed a First Amended Complaint. ECF No. 18. Due to errors in the submission, Plaintiffs refiled a corrected version of the operative pleading on the following day. ECF Nos. 19, 20 & 21. On November 20, 2020, Securus again filed motions seeking dismissal and the striking of Plaintiffs' class allegations. ECF Nos. 24, 25. Among other things, Securus noted that the First Amended Complaint fails even to address the published policies of county jails requiring telephone users to designate phone numbers on which calls should not be recorded for reasons of privilege. *See* ECF No. 25 at 4 & 6-7; *see also* ECF No. 26.

Before responding to the dispositive motions brought by Securus, Plaintiffs elected to file the motions presently under consideration. In doing so, Plaintiffs persist in ignoring the simple, published procedures for designating calls that should not be recorded due to privilege. It is a glaring omission in light of Plaintiffs' choice to submit evidence in support of their motions that relates to the jails in just two counties—Somerset and Aroostook. ECF Nos. 32-1 & 32-2. A proper prefiling inquiry should have alerted Plaintiffs to the fact that Securus does not provide inmate telephone services to the Somerset County Jail, rendering the already meager evidence in Plaintiffs' affidavit (ECF No. 32-1) about the services there completely irrelevant. *See* Declaration of Joshua Conklin ("Conklin Decl.") ¶ 5 filed in support of this opposition.[1] Similarly, both a prefiling inquiry and the motion to dismiss filed by Securus should have alerted Plaintiffs to the Aroostook County Jail handbook, which

---

[1] Securus has concurrently filed evidentiary objections to the affidavits Plaintiffs submitted in support of their motions.

sets forth a clear and simple process to avoid recordings of privileged calls. *See, e.g.,* ECF No. 26-2. Moreover, evidence demonstrates that certain defense counsel followed these procedures, while others—including Plaintiff Tebbets—did not. Conklin Decl. ¶23(a)-(c) and Ex. F thereto (Securus' Call Detail Report records reflecting that certain defense counsel for Plaintiff Perry successfully privatized their phone numbers with the Aroostook County Jail, so that their calls were not recorded, but Plaintiff Perry's other defense counsel, Plaintiff Tebbets, did not until May 8, 2020). This is hardly a case describing a "systemic problem," or even one about users with "no choice but to use Securus' compromised communications systems." ECF No. 32 at 2 & ECF. No. 33 at 2.

This is instead a case brought by a small group of criminal defense lawyers and two former Aroostook County Jail inmates who failed to follow some basic procedures with which countless others have no problem. *See* Conklin Decl. ¶¶ 6-10; *see also* Affidavit of Aroostook County Jail Administrator Craig Clossey ("Clossey Aff."), ¶¶ 3-7 (filed in support of this opposition). Ignoring this reality, Plaintiffs boldly proclaim that "[t]here is no excuse for Securus' failure to screen out these calls." ECF No. 32 at 2. But the explanation is simple—to the extent that Securus did not screen out privileged calls it is because Plaintiffs failed to take the simple step to submit their telephone numbers to the correctional facilities at issue, so that their calls would not be recorded.  Conklin Decl. ¶¶ 6-10, 23(a)-(c) and Ex. F. This is further confirmed by the fact that once Plaintiffs did submit their telephone numbers to the correctional facilities at issue, their numbers were made private, and their calls were not recorded

or monitored.  *Id.* ¶¶ 19(a)-(c), 21(a)-(b), 23(a)-(c) and Exs. C, D, E and F.

## III.   <u>GOVERNING LEGAL STANDARDS</u>

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p. 129 (2d ed. 1995)). Thus, "[a]n injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).

The caution against granting such an extreme remedy is particularly high where the injunction mandates an affirmative act by the defendant rather than merely "preserve the status quo." *Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981); *see also L.L. Bean, Inc. v. Bank of America*, 630 F. Supp. 2d 83, 89 (D. Me. 2009) (collecting cases supporting a general reluctance to grant mandatory preliminary injunctions, and to look upon requests for them with disfavor).

To satisfy this strict standard and high bar, a plaintiff must show four things: (1) a "substantial likelihood of success on the merits," (2) a "significant potential for irreparable harm in the absence of immediate relief," (3) the requested injunction "will not impose more of a burden on the nonmovant than its absence will impose on the movant," and (4) "that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest." *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001)*; see also Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 22-

23 (2008).

## IV.   ARGUMENT

### A.   Plaintiffs Are Not Likely To Prevail On The Merits.

Generally, the above-referenced "four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9-10 (1st Cir. 2013) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996)). This unequal weighting means that "plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). This rule effectively dooms Plaintiffs' cause because they have adduced no evidence that warrants the Court's extraordinary intervention to impose a mandatory preliminary injunction against Securus. To the contrary, the facts recited in Plaintiffs' affidavits actually undermine their claims. Moreover, additional evidence submitted with this opposition exposes Plaintiffs' claims as baseless.

The only evidence that Plaintiffs offer in support of their motion for preliminary injunction are two affidavits, each of which are barely more than a page long. ECF Nos. 32-1 & 32-2. Plaintiff Jeremy Pratt states that he is an attorney who "represent[s] an inmate that is currently incarcerated at the Somerset County jail in an ongoing criminal matter." ECF No. 32-1 ¶ 4. Mr. Pratt asserts that some unidentified person "in the Office of the Maine Attorney General" contacted him in April 2020, and then repeats the hearsay that this person supposedly "told [him] that their office had been provided by Securus with a recording of a call between myself

and my client in the Somerset County Jail." *Id.* ¶ 6.

This Court certainly enjoys discretionary authority to consider hearsay in deciding the propriety of issuing a preliminary injunction. *See Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) (weighing such evidence given both "the need for expedition" and the fact that the hearsay at issue had been subject to cross-examination in a related proceeding). The Court likewise may assign such evidence little weight given its self-serving nature, the fact that its source is unnamed, and the lack of any corroborating evidence. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ("The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage."). Still, the best reason for rejecting Mr. Pratt's hearsay evidence is that other, actually competent evidence submitted by Securus reveals that it has never had a contract with the Somerset County Jail to provide inmate telephone services, and, as such, has never provided telephone (or telephone recording) services to it. Conklin Decl. ¶ 5. If Mr. Pratt's calls were recorded unlawfully by the Somerset County Jail, the responsible party is not Securus.

The other evidence Plaintiffs provide is the affidavit of Steven Belleau, a former inmate at Aroostook County Jail and purportedly a client of Plaintiff Jack Tebbetts. ECF No. 32-2 ¶¶ 1 & 3. As a preliminary matter, former inmates such as Mr. Belleau (and the other former inmate Plaintiff Perry) lack standing to seek injunctive relief because there is not "'sufficient likelihood that [they] will again be wronged in a similar way.'" *Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019) (citing

*Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)).  Indeed, former inmates are not sufficiently likely to reencounter the principal harm alleged in this case—of having their allegedly privileged phone calls (made while incarcerated) recorded—precisely because they are no longer inmates at the Maine County jails they seek to enjoin.  *See Wilson v. Brown,* No. 05-cv-1774-BAS-MDD, 2015 U.S. Dist. LEXIS 166443 (S.D. Cal. Dec. 11, 2015) at * 12 (holding that former inmate lacked standing to seek injunctive relief in putative class action because he had been transferred to another correctional facility and had "no immediate prospect" of returning to incarceration at the defendant facility).

As to the contents of Mr. Belleau's affidavit (ECF No. 32-2), it recites hearsay from Mr. Tebbetts about their calls having been recorded by Securus, ostensibly despite Mr. Belleau having "done everything in my power to ensure [the calls] were confidential." *Id.* ¶ 6. Immediately after making this statement, Mr. Belleau curiously adds that "[a]t no point in my time in the Aroostook County Jail was I given directions of any kind regarding how I was to avoid having my calls with my attorney recorded by Securus." *Id.* ¶ 7.  This additional statement appears to beg the question of what steps Mr. Belleau actually took to ensure his calls with Mr. Tebbetts were confidential, if he did not know what those steps even were.

In any event, Mr. Belleau's vague statement is contradicted by the sworn testimony of the Aroostook County Jail Administrator, Commander (Cmdr.) Craig Clossey, who explains:

> As part of the Aroostook County Jail's standard intake process for new inmates, the jail's Corrections Staff explains various policies to the inmates, including the protocols for utilizing the jail's phones. Inmates are requested to give the Corrections Staff the name and telephone number of their attorney during the classifications process so calls to their attorney are identified as private and not subject to monitoring or recording. Calls placed by inmates to phone numbers on the private call list are not recorded or monitored. Unless and until the inmate provides the name and phone number of his attorney to the Corrections Staff, the Corrections Staff has no way of knowing the inmate's attorney's telephone number.

Clossey Aff. ¶ 3. Cmdr. Clossey further confirms that "[a]s a new inmate, Mr. Belleau would have received the standard briefing on various jail policies, including how to use the phones" (*id.* ¶ 6), an Inmate Handbook (*id.*) and also was "notified of the jail's policy to monitor and record phone calls through signs posted immediately adjacent to all of the phones at the facility which state, 'ALL PHONE CALLS ARE SUBJECT TO MONITORING AND/OR RECORDING.'" *Id.* ¶ 7 and Ex. C thereto.

The Aroostook County Jail's requirement that inmates identify their attorney's name and phone number to avoid recordings of privileged calls is neither particularly complicated nor novel. Similar procedures were discussed by the First Circuit more than two decades ago in *Gilday v. Dubois*, 124 F.3d 277 (1st Cir. 1997). In that case, the court discussed assigning personal identification numbers to inmates, limiting the number of phone numbers they could call, and requiring them to specify the phone numbers of their attorneys precisely to exempt those calls from the standard "monitoring/recording regime." *Id.* at 281. The court characterized these mandates as "lawful restrictions founded upon reasonable prison-security measures." *Id.* at 294. Apparently, some inmates and their defense counsel follow these common procedures, while others—including Plaintiffs Belleau and Tebbets—did not. Conklin Decl. ¶¶

23(a)-(c) and 24.

Even when (former) inmates such as Mr. Belleau, ignore the Aroostook County Jail's instructions, and the signs immediately next to phones they are using announcing that "ALL PHONE CALLS ARE SUBJECT TO MONITORING AND/OR RECORDING" (Clossey Aff. ¶¶ 6-7), a further fail safe device in the form of an oral admonishment at the beginning of each and every call placed by Mr. Belleau to Mr. Tebbetts advised that that their calls were "subject to recording and monitoring" and instructed the receiver of the call to "press a specified digit on their phones to proceed with the call after being informed that it would be recorded and monitored, or press a different specified digit to affirmatively decline the call." Conklin Decl. ¶¶ 11-12. Accordingly, because both Mr. Belleau and Mr. Tebbets were notified multiple times that their calls were being recorded or monitored prior to any calls taking place, they necessarily consented to monitoring and recording of any such calls. *See United States v. Novak*, 531 F.3d 99, 103 (1st Cir. 2008) (finding consent to monitoring and recording of attorney calls where automated admonishments played prior to proceeding with the call).

Further, while Mr. Belleau claims that "[d]uring my time in the Aroostook County Jail, I made multiple calls to Plaintiff Tebbetts using Securus' system in which I sought and received legal advice" (ECF No. 32-2 ¶ 4), Mr. Belleau actually did not use Securus' system to obtain any legal advice from Mr. Tebbetts. As reflected in the Call Detail Reports from Securus' system, while Mr. Belleau placed 25 (twenty-five) calls to Mr. Tebbetts' office phone number (207-760-7251) from the Aroostook

County Jail, none of the calls were completed because the duration of all 25 calls was 0 (zero) seconds. Conklin Decl. ¶ 24 and Ex. G thereto. Accordingly, no attorney-client communications between Mr. Belleau and Mr. Tebbetts were recorded by Securus. *Id.*

Finally, among other arguments raised in Securus' motion to dismiss, the lack of a general privacy right that attaches to inmate communications necessitates that Securus have had the "conscious objective" to record *privileged* calls before liability can attach under the wiretap statutes at issue. *See, e.g., In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 23 (1st Cir. 2003). Of course, because Mr. Belleau failed to follow the Aroostook County Jail's aforementioned procedures—or otherwise alert anyone that he did not want his calls with Mr. Tebbetts recorded—Securus had no way of knowing these calls were between an attorney and his client. Without demonstrating that basic knowledge, Plaintiffs also will be unable to demonstrate that Securus intended to record privileged calls in particular, dooming their ability to prevail on the merits.

### B.   <u>Plaintiffs Make No Showing Of Irreparable Harm.</u>

"[D]elay between the institution of an action and the filing of a motion for preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) (citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) (denying motion in part due to "the six-week delay between filing the complaint and seeking the preliminary injunction")); *see also Friends of Merrymeeting Bay v.*

*Nextera Energy Res., LLC*, No. 2:11-cv-38-GZS, 2013 U.S. Dist. LEXIS 61240, *31, 2013 WL 1835379 (D. Me. Apr. 30, 2013) ("A plaintiff undermines its claim of irreparable harm where there is delay between instituting the action and seeking injunctive relief.").

In this case, Plaintiffs waited nearly four months between commencing the action and filing their motion, purportedly after Securus has engaged in the challenged practices for "years." ECF No. 32 at 5. Numerous cases have denied preliminary injunctive relief in similar instances, even when facing much shorter delays. *See, e.g., Isaacs v. Trs. of Dartmouth College*, No. 17-cv-040-LM, 2017 U.S. Dist. LEXIS 148897, *12, 2017 WL 4119611, * 5 (D.N.H. Sep. 14, 2017) (denying motion noting plaintiff "waited . . . four months to file his motion seeking preliminary injunctive relief" after filing his complaint); *Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 94 (D. Me. 2008) (denying in part a motion because "Plaintiffs offer no explanation for why they waited . . . six weeks after filing suit . . . to seek a preliminary injunction"); *Fund For Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1976) (affirming denial of preliminary injunction where plaintiffs waited just 44 days after knowing the relevant facts to bring the motion). The result here should be the same.

Moreover, Plaintiffs do not allege that any third party ever listened to the contents of privileged communications in unlawfully recorded calls, if any. To the contrary, the First Amended Complaint alleges only that after someone in the Maine Attorney General's office "recognized Tebbetts' voice," it promptly provided the

-11-

recordings to the Mr. Tebbetts so that *he* could "screen out privileged calls," if any. ECF No. 21 ¶¶ 30 & 31. Far from alleging actual harm, such allegations describe at most implausible equipoise that just as easily supports the conclusion that no harm occurred whatsoever. *See Katz v. Pershing, LLC*, 672 F.3d 64, 79-80 (1st Cir. 2012).

Further, with the notable exception of Somerset County Jail, to which Securus does not even provide telephone services (Conklin Decl. ¶ 5), Plaintiffs have successfully privatized their phone calls from each of the correctional facilities they complain about. *See* ECF No. 32 at 3 (claiming without support that "Securus failed to ensure there were proper safeguards preventing it from recording confidential communications between attorneys and inmates in the Androscoggin, Aroostook, Franklin and Somerset county jails.") For example, "Plaintiff Ruffner successfully privatized his office phone number (207-221-5736) with the Androscoggin County Jail on or about July 27, 2015 and the Franklin County Jail on or about December 28, 2017." Conklin Decl. ¶ 19(a) & (b) and Exs. C and D thereto. Likewise, Plaintiff Tebbetts, while slow to follow the required procedures, eventually privatized his office phone number (207-760-7251) with the Aroostook County Jail on or about May 8, 2020. Conklin Decl. ¶ 21(b). "From that date forward, all calls placed from the Aroostook County Jail to [Plaintiff Tebbetts'] office line were private and therefore were <u>not</u> recorded or monitored." Conklin Decl. ¶ 21(a) & (b) and Ex. E thereto (Securus Call Detail Report reflecting calls from the Aroostook County Jail to Plaintiff's Tebbets' office line and demonstrating that all calls from May 8, 2020 forward were designated as private and not recorded or monitored.) Accordingly,

-12-

there is no need for Plaintiffs' requested injunction because the existing procedures (i.e., the attorney or inmate identifies the attorney's phone number to the jail, so that it will not be recorded) function appropriately.

### C.  The Balance of Harms Favors Securus.

An injunction should not be granted if "a less drastic remedy" suffices to prevent or minimize the risk of irreparable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). In addition to raising doubts about Plaintiffs' likelihood of success and their showing of irreparable harm, both the factual discussion above, as well as governing First Circuit authority, makes evident the availability of a less drastic remedy that is already operational. Attorneys and their inmate clients may comply with simple procedures published by the county jails housing those inmates to provide staff at those facilities the phone numbers that the inmates wish to exempt from general surveillance. *Gilday*, 124 F.3d at 294 (explaining that such procedures actually "afford inmates the opportunity to utilize the [inmate telephone system], subject to reasonable restrictions designed to preclude fraud, crime, and misuse"). Following these procedures greatly minimizes the risk of harm to Plaintiffs from the prospect of inadvertent recordings of privileged calls.[2]

---

[2] Plaintiffs admit that "isolated mistakes are almost certainly unavoidable." ECF No. 32 at 5. Despite making this concession, Plaintiffs contend that "over 800 calls" were illegally recorded, tellingly citing no evidence to support such bold conjecture that simply parrots an allegation in their First Amended Complaint. *Id.*; *see also id.* at 3; ECF No. 21 ¶ 22. Plaintiffs similarly attempt to buttress their contention of a widespread, "systemic problem" on the suggestion that Securus "has been sued in multiple jurisdictions over substantially similar claims." ECF No. 32 at 2. But an examination of the other lawsuits Plaintiffs cite reveals stark differences that undermine their argument. *See, e.g., Romero v. Securus Techs., Inc.*, No. 16cv1283 JM (MDD), 2020 U.S. Dist. LEXIS 217489, *17, 2020 WL 6799401 (S.D. Cal. Nov. 19, 2020) (noting that plaintiffs settled the case – which did not involve alleged violations of wiretapping statutes – because of "risks . . .

On the other side of the scale, an inmate's use of a telephone is "subject to rational limitations in the face of the prison's legitimate security interests." *Collins v. Kennebec County Jail*, No. 1:12-cv-00069-GZS, 2012 U.S. Dist. LEXIS 38714, *9, 2012 WL 987328, *3 (D. Me. Mar. 21, 2012). As the First Circuit has explained, the described procedures are "designed to preclude fraud, crime, and misuse." *Gilday*, 124 F.3d at 294. Without imposing rational limitations on the phone numbers inmates call and generalized monitoring and recording of all calls except those made to numbers designated for privileged conversations, inmates could freely contact and intimidate victims, witnesses, or their affiliates and co-conspirators.  Conklin Decl. ¶ 6. In balancing the harms, substantial weight should be accorded to these well-recognized interests in security and public safety. *See Barendt v. Gibbons*, No. 3:08-CV-161-LRH (RAM), 2009 U.S. Dist. LEXIS 83333, *10 (D. Nev. Jun. 4, 2009) (comparing "[t]he *de minimis* burden on [the plaintiff's] religious practice" against a "prison's interest in the safety and security of the institution. . . . The [Prison Litigation Reform Act] requires the court to accord 'substantial weight to *any* adverse impact on public safety' and follow the least intrusive means possible when considering injunctive relief.") (quoting 18 U.S.C. § 3626(a)(2) (emphasis in original)).

### D.    Denial Of Plaintiffs' Motion Serves The Public's Interest.

For the same reason that the balance of harms favor Securus, it is in the

---

associated with a trial."); *see also, e.g., Huff v. CoreCivic, Inc.,* No. 17-2320-JAR-JPO, 2018 U.S. Dist. LEXIS 35195, *11-12, 2018 WL 1175042 (D. Kan. Mar. 5, 2018) (dismissing complaint against Securus in part because "Plaintiffs have not nudged their disclosure claims against Securus 'across the line from conceivable to plausible.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

public's interest to deny the request for preliminary injunction. There is no tenable way for Securus to identify preemptively the universe of all possible phone numbers belonging to criminal defense attorneys representing inmates in Maine, nor can Securus instruct its correctional facility customers to privatize phone numbers in any event because the facilities control their own security and determine which dialed phone numbers to record for that purpose. Conklin Decl. ¶¶ 6-10.  As such, the only alternative under the preliminary injunction would be for Securus to cease from monitoring and recording *all* inmate calls at all correctional facilities it contracts with in Maine. As noted above, governing law rejects this approach and instead endorses simple, rational procedures for inmates and their lawyers to take in order to exempt their calls from the monitoring and recording that serves recognized security interests. *See Gilday*, 124 F.3d at 294; *see also, e.g., Griffin v. Hillsborough Cnty. Dep't of Corr.*, No. 13-cv-539-SM, 2015 U.S. Dist. LEXIS 40331, *3, 2015 WL 1457628, * 1 (D.N.H. Mar. 30, 2015) ("The restriction on Griffin's phone use is reasonably related to a legitimate institutional interest, is not excessive relative to that interest, and does not impose any undue or unfair burden on Griffin . . . .").

## E.   Plaintiffs Fail To Show Good Cause To Expedite Discovery.

"In order for a party to obtain expedited discovery before the Rule 26(f) Conference, it must show good cause." *Laughlin v. Orthofix Int'l, N.V.,* 293 F.R.D. 40, 41 (D. Mass. 2013) (citing Fed. R. Civ. P. 26(b)(1)). "The First Circuit has not addressed the proper standard to determine whether 'good cause' exists" in these circumstances. *Id.* Many district courts apply "a 'reasonableness' standard that assesses the reasonableness of the request in light of all the circumstances." *Id.* Some

other courts employ "a four-part inquiry that is similar to a preliminary injunction standard." *Id.*

If this Court follows the latter course, it is clear that Plaintiffs effort to obtain expedited discovery to support their motion for a preliminary injunction should fail for the same reasons that that substantive motion should fail itself. Applying the alternative reasonableness standard should not generate a different result. Plaintiffs' motion to expedite discovery "provides no indication that harm will result unless the motion is granted or that there is a likelihood of success on the merits." *Id.* at 42. Moreover, Plaintiffs broad request for "records and admissions related to Securus' recording practices that are being used on an ongoing basis," ECF No. 33 at 4, is not the type of "particularized" or "narrow" request that might conceivably be deemed reasonable. *In re WebSecure, Sec. Litig.*, No. 97-10662-GAO, 1997 U.S. Dist. LEXIS 19600, at *13, 1997 WL 770414 (D. Mass. Nov. 26, 1997); *see also, e.g., St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239 & 240 (S.D. Tex. 2011) (noting that "expedited discovery is not the norm" and that in the rare case warranting it, such discovery "should be narrowly tailored in scope").

## V.   **CONCLUSION**

For the foregoing reasons, Securus respectfully requests that the Court deny Plaintiffs' motions for preliminary injunction and expedited discovery.

Dated:  December 28, 2020            Respectfully submitted,


                                     */s/ Jason J. Theobald*
                                     Richard Olson
                                     Jason J. Theobald
                                     CURTIS THAXTER LLC

One Canal Plaza, Suite 1000
P.O. Box 7320
Portland, Maine 04112-7320
Tel: 207-774-9000
Email: rolson@curtisthaxter.com
   jtheobald@curtisthaxter.com

Admitted *Pro Hac Vice*:
Adam R. Fox
Gabriel Colwell
Marisol C. Mork
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Email: adam.fox@squirepb.com
   gabriel.colwell@squirepb.com
   marisol.mork@squirepb.com

*Counsel for Defendant*
*Securus Technologies, LLC,*
*f/k/a Securus Technologies, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 28, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause an electronic notice to be sent to all registered counsel of record.


Dated:   December 28, 2020          */s/ Jason J. Theobald*
                                           Counsel for Defendant
                                           Securus Technologies, LLC,
                                           f/k/a Securus Technologies, Inc.