UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEREMY PRATT, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|         v. | )  1:20-cv-00295-JDL |
| | ) |
| SECURUS TECHNOLOGIES, INC, | ) |
| | ) |
|    Defendant. | ) |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Attorneys Jeremy Pratt, John W. Tebbetts, and Robert J. Ruffner (the "Attorney Plaintiffs"), along with Steven Belleau and Matthew Perry, both of whom were formerly incarcerated in Maine county jails (the "Client Plaintiffs," and collectively with the Attorney Plaintiffs, "Plaintiffs"), filed this putative class action against Securus Technologies, Inc., which provides telecommunications services to several Maine jails (ECF No. 21). The Plaintiffs allege that Securus violated federal and Maine wiretap laws when it recorded phone calls between attorneys and their clients and distributed those recordings to law enforcement officials and prosecutors. Securus has moved to dismiss the Complaint (ECF No. 25). Because I conclude that the Plaintiffs have failed to allege facts which, if proven, would establish that Securus acted intentionally—a required element of the governing federal and Maine laws—I grant Securus's motion.

### I. BACKGROUND

The following facts are derived primarily from the Plaintiffs' First Amended Complaint. I also take judicial notice of two state and county written policies that

Securus has submitted in support of its motion to dismiss: specifically, Maine Department of Corrections Policy Number 21.3, "Prisoner Telephone System" (last revised June 13, 2019) (ECF No. 26-1), and the Aroostook County Jail Inmate Handbook (last revised Sept. 2020) (ECF No. 26-2). *See Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (noting that on a motion to dismiss, the court "may augment [the facts pleaded in the complaint] with . . . matters of public record[] and facts susceptible to judicial notice").[1]

Securus provides telecommunications services to multiple Maine jails, including the Aroostook County Jail. As part of that arrangement, Securus records phone calls made by prisoners. The Aroostook County Jail Handbook states: "All [telephone] calls except to attorneys will be monitored and recorded." ECF No. 26-2 at 10. It also provides: "Attorney phone numbers are unrecorded. Please provide [a jail officer] with your attorney's number to ensure it is on the private call list." *Id*. Similarly, the Maine Department of Corrections policy states: "All telephone calls made on the prisoner phone system, except for privileged calls, may be recorded." ECF No. 26-1 at 11. It also sets forth the procedures for a prisoner to designate "names and numbers to which the prisoner wishes to make legal telephone calls." *Id*. at 5.

According to the Complaint, "Securus failed to screen out Attorney-Client privileged calls from those calls it recorded," ECF No. 21 ¶ 17, and distributed recordings of those allegedly privileged calls to jail administrators and prosecutors.

---

[1] At oral argument on Securus's Motion to Dismiss, I granted its Motion for Judicial Notice as to these documents (ECF No. 26), which the Plaintiffs did not oppose.

For instance, Attorneys Tebbetts and Ruffner represent a client who is or was incarcerated at the Aroostook County Jail. In April and May 2020, the office of the Attorney General of Maine informed them that Securus had provided the Attorney General's office with "recordings of hundreds of [phone] calls" between Attorneys Tebbetts and Ruffner and the client. *Id.* ¶ 28. The recordings had come to light "because a Detective listened to the recordings and recognized [Attorney] Tebbetts' voice." *Id.* ¶ 31. The Complaint also alleges that "several of the calls provided by Securus to the Maine Attorney General's office are protected by the Attorney-Client privilege." *Id.* ¶ 33.

Similarly, Belleau and Perry were each incarcerated in the Aroostook County Jail at different times between 2018 and 2020. During their periods of incarceration, they each made multiple phone calls to Attorney Tebbetts in which they sought legal advice, and Securus allegedly recorded those calls. The Complaint asserts that Belleau "was never given any handbook, direction, or instructions of any kind, whether written or otherwise, that told him how to block the recording of his calls with his attorney." *Id.* ¶ 49.

The Plaintiffs allege that, since July 2019, Securus "has recorded over 800 calls between Attorneys and inmates" in Maine jails, *id.* ¶ 22, and "[c]opies of these recordings have on several occasions been handed over to" local prosecutors or the Attorney General's office, *id.* ¶ 24.

The Plaintiffs filed their First Amended Complaint (ECF No. 21) on November 6, 2020, asserting claims under the Federal Wiretap Act,[2] 18 U.S.C.A. §§ 2510-2523 (West 2021), and Maine's Interception of Wire and Oral Communications Act (the "Maine Wiretap Act"), 15 M.R.S.A. §§ 709-713 (West 2021), as well as class action allegations. Two weeks later, Securus filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6) (ECF No. 25), as well as a Motion to Strike the Class Allegations in the Complaint (ECF No. 24). On December 4, 2020, the Plaintiffs filed a Motion for Expedited Discovery (ECF No. 33). Also before the Court is Securus's motion to strike two affidavits that the Plaintiffs submitted in support of their Motion for Expedited Discovery (ECF No. 38).[3] The Court held a consolidated hearing on the pending motions on February 23, 2021.

## II. LEGAL STANDARDS

### 1.   Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1), the plaintiff "must plead 'sufficient factual matter to plausibly demonstrate standing to bring the action.'" *Perez-Kudzma v. United States*, 940 F.3d 142, 145 (1st Cir. 2019) (alteration omitted) (quoting *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st Cir. 2018)). Where, as here, a motion to dismiss under Rule 12(b)(1) is based

---

[2] The Federal Wiretap Act was originally enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90-351, 82 Stat. 197, and was amended by the Electronic Communications Privacy Act of 1986, P.L. 99-508, 100 Stat. 1848. I refer to the statute in its current form simply as the "Federal Wiretap Act."

[3] The affidavits were attached to a motion for preliminary injunction that the Plaintiffs filed on December 4, 2020 (ECF No. 32). At a case management conference held on February 4, 2021, the Plaintiffs withdrew that preliminary injunction motion, leaving Securus's motion to strike the affidavits outstanding to the extent that the affidavits relate to the Plaintiffs' motion for expedited discovery.

solely on the complaint, courts "appl[y] the plausibility standard applicable under Rule 12(b)(6) to standing determinations." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). In doing so, courts "take [a] complaint's well-pleaded facts as true and indulge all reasonable inferences in the pleader's favor." *Id.*

## 2. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Courts apply a two-pronged approach in resolving a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, the court must identify and disregard statements in the complaint that merely offer legal conclusions couched as factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Second, the court "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quotation marks and citation omitted). The court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Rodríguez-Reyes*, 711 F.3d at 52-53; *see also Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (noting that a court addressing a Rule 12(b)(6) motion must "view the [c]omplaint in the light most favorable" to the plaintiff). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

Securus argues that the Complaint should be dismissed because it does not sufficiently allege (1) a concrete injury which establishes the Plaintiffs' standing, and (2) that Securus violated the wiretap statutes. Because "standing is a threshold issue," I address it first. *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995).

**1.   Standing**

Federal court jurisdiction is limited "to actual cases or controversies," *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quotation marks omitted); *see* U.S. Const., art. III, § 2, and the doctrine of standing "ensure[s] that federal courts do not exceed their authority" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "'irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Securus's argument addresses the injury-in-fact requirement.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Although "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," a "bare procedural

violation, divorced from any concrete harm," is not enough: "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

In their Complaint, the Plaintiffs assert that the harm that they suffered or risk suffering due to Securus's allegedly illegal conduct is the violation of their attorney-client privilege. Securus contends, however, that the Complaint's allegations, even if proven, are insufficient to establish that any of the allegedly unlawfully recorded phone calls were subject to the attorney-client privilege, and thus that the Plaintiffs have failed to establish a concrete injury traceable to the recordings. Securus argues that the Complaint fails to provide sufficient factual allegations to show that any particular, allegedly recorded phone call satisfies the First Circuit's eight-element test for determining the existence of the privilege.[4] *See Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002).

Securus's argument that the Complaint is deficient in alleging violations of the attorney-client privilege because it fails to set forth, in minute detail, the subject or context of the allegedly unlawfully recorded phone calls is unpersuasive. The Complaint alleges that "Securus recorded several calls during which [Perry] sought legal advice from [Attorney Tebbetts]" while Perry was incarcerated in the Aroostook County jail. ECF No. 21 ¶ 42. It also states that while Belleau was held in the same jail, he made "multiple calls to [Attorney Tebbetts] in which he sought and received legal advice." *Id.* ¶ 46. On a motion to dismiss, I must view these allegations in the

---

[4] Specifically, as a matter of evidentiary law, the privilege applies: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Cavallaro*, 284 F.3d at 245 (internal quotation marks omitted).

light most favorable to the Plaintiffs, *see Wilson*, 744 F.3d at 7, and "draw on [my] judicial experience" to determine the plausibility of the Plaintiffs' standing, *Iqbal*, 556 U.S. at 679; *see also Hochendoner*, 823 F.3d at 730 (noting that courts apply the Rule 12(b)(6) plausibility standard "to standing determinations at the pleading stage").

Experience and common sense teach us that persons incarcerated in prison typically speak to their defense attorneys by phone to discuss matters related to their professional relationship, as opposed to engaging in a casual or social chat. Thus, the Complaint plausibly sets forth facts from which a violation of the attorney-client privilege might be found and, therefore, the Client Plaintiffs have standing to sue. Additionally, because the Attorney Plaintiffs seek the same injunctive relief as that sought by the Client Plaintiffs, I do not address whether the Attorney Plaintiffs have independent standing. *See Comfort v. Lynn Sch. Comm.*, 418 F.3d 1, 11 (1st Cir. 2005) (en banc) ("So long as one plaintiff has standing to seek a particular form of global relief, the court need not address the standing of other plaintiffs seeking the same relief."), *abrogated on other grounds by Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007).

For these reasons, the Complaint is not subject to dismissal for lack of standing.

### 2. Sufficiency of the Complaint

Securus next argues that the Complaint fails to state a plausible claim that Securus violated the federal or Maine wiretap statutes, because the Complaint does

not plausibly allege that Securus intentionally recorded privileged phone calls. For reasons I will explain, I agree.

The Federal Wiretap Act "prohibits the intentional 'interception of telephone conversations, subject to certain exceptions . . . , without a court order.'" *In re HIPAA Subpoena*, 961 F.3d 59, 65 (1st Cir. 2020) (emphasis and footnote omitted) (quoting *United States v. Lewis*, 406 F.3d 11, 14 (1st Cir. 2005)). The Maine Wiretap Act, which the Maine Law Court has described as "parallel" to the Federal Wiretap Act, *Griffin v. Griffin*, 2014 ME 70, ¶ 23, 92 A.3d 1144, 1150, prohibits any person from "intentionally or knowingly intercept[ing]" wire communications, likewise subject to a number of exceptions, 15 M.R.S.A. § 710(1).[5]

"'Intentional' as used in the context of [the Federal Wiretap Act] 'means more than that one voluntarily engaged in conduct or caused a result.'" *In re HIPAA Subpoena*, 961 F.3d at 65 (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003)). "Instead, the 'conduct or the causing of the result must have been the person's conscious objective.'" *Id.* (quoting *In re Pharmatrak*, 329 F.3d at 23). "An act is not intentional if it is the product of inadvertence or mistake." *In re Pharmatrak*, 329 F.3d at 23; *see In re HIPAA Subpoena*, 961 F.3d at 66 ("[N]either negligence nor gross negligence satisfies the intent element required to find a [Federal Wiretap Act] violation."). Although the determination of intent under the Federal Wiretap Act

---

[5] Although there has not been a published decision that has addressed the Maine Wiretap Act's state of mind requirement, the parties agree that the state of mind standard under the Maine law is, as the Plaintiffs put it, "substantially similar" to the federal standard. ECF No. 34 at 5; *see Griffin*, 2014 ME 70, ¶ 23, 92 A.3d at 1150-51 (noting that, in interpreting the Maine Wiretap Act, the Law Court will "consider other sources for guidance, including decisions from other jurisdictions that interpret the [Federal Wiretap Act]"). Accordingly, I "regard[] the statutory meaning of [the state of mind requirement] as consistent with the federal analog[]." *Thayer Corp. v. Reed*, No. 2:10-cv-00423-JAW, 2011 WL 2682723, at *6 (D. Me. July 11, 2011).

"does not turn on an assessment of the merit of a party's motive . . . , [a]n interception may be more likely to be intentional when it serves a party's self-interest to engage in such conduct." *In re Pharmatrak*, 329 F.3d at 23.

The Plaintiffs contend that the intentionality requirement may be satisfied by the allegation that Securus, under its contracts to provide telecommunications services to the jails, intentionally engaged in the conduct of recording phone calls made to and from those facilities. The Plaintiffs assert that the "intent" required for Federal Wiretap Act liability is simply that Securus intended to record phone calls made from jail phones, not that Securus specifically intended to record attorney-client phone calls. However, this theory of liability—which is somewhat akin to the concept of transferred intent in tort, *see* Restatement (Second) of Torts § 16 (Am. Law Inst. 1965)—is contrary to the First Circuit's analysis in *In re HIPAA Subpoena*.

In that case, an employer lawfully recorded phone calls made from a particular employee's phone extension while she worked in a call center. 961 F.3d at 62, 63 n.3. When the employee was promoted to a managerial position and transferred to an office "where calls [were] typically not recorded," the employer transferred her phone extension but neglected to "manually terminate[] the recording license that had [previously] been assigned to her extension." *Id.* at 62-63. In the course of an unrelated Medicare-fraud investigation, the government issued a subpoena for certain of the employer's records, including "all recorded conversations of [the employer's] . . . employees." *Id.* at 63 (alteration omitted). The employee moved as an intervenor to quash the subpoena, and a magistrate judge granted the motion to quash on the ground that the recordings were obtained in violation of the Federal

Wiretap Act. *See id.* The First Circuit concluded that even though the employer "bought the recording licenses with the intent to record calls made to and from the extensions assigned to" the call center positions, *id.* at 67, the magistrate judge had erred in finding that the employer "intended to continue the recordings after [the employee] was promoted and relocated to [the office] where telephone conversations were usually not recorded," *id.* at 66 (emphasis omitted). The court observed that to establish a violation of the Federal Wiretap Act, the employee "needed to prove not merely that [the employer's] actions or omissions caused the continuing recording of calls on [the employee's] extension, but rather that the continuing recording was the result of [the employer's] conscious objective." *Id.* at 67 (quotation marks omitted). For purposes of this case, the important point in *In re HIPAA Subpoena* is that the employer's intent to record the calls that it was allowed to record (i.e., calls that were made while the employee worked in the call center) could not be used to establish its intent to record calls that it was not allowed to record (i.e., the calls made after the employee moved offices).

The Plaintiffs also cite a decision from the Northern District of Illinois, *Narducci v. Village of Bellwood*, for the proposition that liability under the Federal Wiretap Act "does not . . . require any intent to violate the law, or even any knowledge that the interception would be illegal." 444 F. Supp. 2d 924, 935 (2006). However, read in context, this is simply a restatement of "the general rule that mistake or ignorance of law is no defense." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010); *see Narducci*, 444 F. Supp. 2d at 935 (citing *Earley v. Smoot*, 846 F. Supp. 451, 453 (D. Md. 1994) ("[L]iability may be imposed under [the

11

Federal Wiretap Act] merely for intentional—in the traditional sense of purposeful—conduct, without a showing of disregard of a known legal duty.")). The Illinois court did not rule that a defendant is liable under the wiretap laws when, in the course of recording communications he is permitted to record, he negligently intercepts other transmissions. And, as I have already discussed, the First Circuit has rejected that quasi-transferred-intent theory. *See In re HIPAA Subpoena*, 961 F.3d at 66; *accord* S. Rep. 99-541, at 23-25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 1986 WL 31929 (providing examples of factual scenarios, such as electronics testing, that should or should not satisfy the Federal Wiretap Act's state of mind requirement). Regardless of the defendant's understanding of its duties under the law, anything less than intentional interception is simply insufficient to establish liability under the Federal Wiretap Act, and intent must be assessed with respect to the communications that are actually intercepted, rather than transferred from the defendant's intent to intercept communications that the defendant is permitted to record.

The relevant question, then, is whether the Complaint contains sufficient factual matter to plausibly allege that Securus intentionally recorded attorney-client calls, not just that it intentionally recorded phone calls made from jail phones. This it fails to do. The Complaint alleges that Securus "failed to screen out Attorney-Client privileged calls from those calls it recorded," ECF No. 21 ¶ 17, and that "Belleau was never given any handbook, direction, or instructions of any kind . . . that told him how to block the recording of his calls with his attorney," *id.* ¶ 49. However, the Complaint does not allege that Securus—rather than the jail officials—was under a duty, contractual or otherwise, to provide inmates with information about how to

12

protect their privileged calls. Indeed, as the Plaintiffs' counsel conceded during oral argument, the Complaint does not allege that Securus was sufficiently aware of any laxity in the jails' procedures such that its continuing to record unprotected phone calls, without taking affirmative steps to address the issue, establishes that it intended to record attorney-client calls.[6]

The Plaintiffs also point to a decision from the District of Kansas, also involving Securus, in which the court denied Securus's motion to dismiss Federal Wiretap Act claims brought by prisoners at a privately-run detention facility against both Securus and the facility operator. *See Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO, 2018 WL 1175042, at *2, 4 (D. Kan. Mar. 5, 2018). The facility operator and Securus had principally argued that their conduct fell within the "business extension exception" to the Federal Wiretap Act, 18 U.S.C.A. § 2510(4), and the court did not have any reason to address the state of mind issue that Securus has raised here. *See id.* at *3-4. Crucially, an examination of the complaint in that case reveals a factual allegation that would satisfy the "conscious objective" standard described in *In re Pharmatrak*, 329 F.3d at 23 (internal quotation marks omitted). Specifically, the complaint in *Huff* alleged, "[The detention facility operator] and/or Securus were aware that they were operating a system that captured and recorded confidential attorney-client communications." Complaint ¶ 21, *Huff*, No. 17-2320-JAR-JPO (D.

---

[6] The Complaint also alleges that "[s]ince July 2019, Securus has recorded over 800 calls between Attorneys and inmates" at the jails, ECF No. 21 ¶ 22, and that "[c]opies of these recordings have on several occasions been handed over to" prosecutors, *id.* ¶ 24. However, the Plaintiffs do not argue that these numbers alone can plausibly establish Securus's intent to record attorney-client calls; instead, the Plaintiffs have relied entirely on the legal proposition that "what matters is that Securus knew it was actively intercepting the calls giving rise to this suit." ECF No. 34 at 4. As I have explained, that is not the correct interpretation of the Federal Wiretap Act.

Kan. June 1, 2017), 2017 WL 11448922. The Complaint here, by contrast, does not allege that Securus was actually aware that it was intercepting and recording attorney-client calls, and it does not otherwise contain non-conclusory allegations which, if proven, would show that Securus's conduct was "intentional" within the meaning of the Federal Wiretap Act.

Because the Complaint does not plausibly allege that Securus's "conscious objective" was to record attorney-client calls, *In re Pharmatrak*, 329 F.3d at 23 (internal quotation marks omitted), it fails to state a claim that Securus violated the Federal Wiretap Act or the Maine Wiretap Act.[7]

3.      **Leave to Amend**

In their response to Securus's motion to dismiss, the Plaintiffs also request leave to file a second amended complaint. However, the Plaintiffs have not filed a formal motion seeking leave to amend, nor have they proposed any particular amendments or additions to the Complaint. If the Plaintiffs wish to seek leave to amend the Complaint a second time, they must file a motion setting forth the particular grounds to support granting leave to amend, and must include a copy of the proposed amended complaint.

---

[7] Because I conclude that the Complaint does not plausibly allege that Securus intentionally intercepted attorney-client phone calls, I do not address Securus's alternative arguments that it falls within various exceptions to and exemptions from liability under both the federal and Maine statutes. *See* 18 U.S.C.A. § 2510(5)(a) (defining "electronic, mechanical, or other device" to exclude "any telephone or telegraph instrument, equipment or facility . . . being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer"); 18 U.S.C.A. §§ 2511(2)(a)(ii), 2518(5); 15 M.R.S.A. §§ 709(3), (4-B), 710(1).

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that Securus's Motion to Dismiss (ECF No. 25) is **GRANTED**.  In light of this disposition, the Plaintiffs' Motion for Expedited Discovery (ECF No. 33) and Securus's Motions to Strike (ECF Nos. 24, 38) are **DENIED AS MOOT**.  However, this disposition is subject to the Plaintiffs filing a motion for leave to file a second amended complaint within 10 days from the issuance of this Order, absent which the Plaintiffs' First Amended Complaint (ECF No. 21) will be dismissed and final judgment entered in favor of Securus.

**SO ORDERED.**

**Dated this 30th day of April, 2021**

                                                  /s/ JON D. LEVY
                                           **CHIEF U.S. DISTRICT JUDGE**