**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**
Civil Action No. 1:20-cv-00295-JDL

JEREMY PRATT,
ROBERT J. RUFFNER,
JOHN TEBBETTS,
STEVEN BELLEAU, and
MATTHEW PERRY
on their own behalf and
on behalf of all others similarly situated,

    Plaintiffs,

v.

SECURUS TECHNOLOGIES, INC.,

    Defendant.

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

---

Plaintiffs' Motion for Leave to File a Second Amended Complaint ("SAC") was filed without undue delay, bad faith or dilatory motive. Further, Plaintiffs' proposed SAC would not be futile. The SAC asserts that Securus is liable for violations of Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* and the analogous Maine statute, 15 M.R.S. § 710 *et seq.* (together, the "Wiretap Acts"), and sets forth factual allegations sufficient to satisfy all elements of a cause of action—including intent—under the Wiretap Acts. Moreover, to the extent that Securus seeks dismissal based on certain affirmative defenses, Securus has not demonstrated those affirmative defenses with the certitude required to justify dismissal at the pleadings stage. *See Blackstone Realty LLC v. FDIC*, 244 F. 3d 193, 197 (1st Cir. 2001) (finding dismissal appropriate only where the Complaint and other appropriately considered documents "'leave no doubt' that the plaintiff's action is barred by the asserted defense.") Accordingly, Plaintiffs' Motion should be granted.

## I. The Second Amended Complaint Sufficiently Pleads the Intent Element of the Wiretap Acts.

The SAC sets out a *prima facie* case for Securus' violation of the Wiretap Acts by alleging that Securus: "(1) intentionally[1] (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept[2] (3) the contents of[3] (4) an electronic communication[4] (5) using a device.[5]" *See In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003). Fed. R. Civ. P. 8 requires a Plaintiff provide just enough factual detail to make a claim "plausible on its face." *Cardigan Mountain School v. New Hampshire Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under this familiar standard, the court determines if the factual allegations, which are accepted as true, are "sufficient to support 'the reasonable inference that the defendant is liable[.]'" *Cardigan Mountain*, 787 F.3d at 84 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). Intent need only be pled generally because "[t]he characterization of a state of mind, after all, does not lend itself to detailed pleading." *US ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004). The SAC satisfies this standard.

More specifically, and as outlined in the Court's April 30, 2021 Order, to plead intent under the Wiretap Acts Plaintiffs must allege "Securus intentionally recorded attorney-client calls and not just that it intentionally recorded phone calls made from jail phones," Order at 12, and that the conduct or causing of the result was Securus' conscious objective. Order at 9 (*citing Pharmatrak*, 329 F.3d at 23).[6] Despite Securus' assertions otherwise, Plaintiffs are not required to allege that

---
[1] SAC ¶¶ 1-5, 22.
[2] SAC ¶¶ 1, 2, 5, 19, 23-26.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Plaintiffs respectfully adopt this standard from the Court's April 30, 2021 Order as the law of the case here, but do not concede any future challenges concerning the scope of this language as found in the Wiretap Acts.

Securus had particularized knowledge of each call it illegally recorded. All that is required at this stage is an allegation that Securus was aware it operated a system that illegally recorded attorney-client communications. The Court emphasized this by citing compliant language from a complaint in a similar case against Securus, *Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO, 2018 WL 1175042 (D. Kan. Mar. 5, 2018), in which plaintiffs alleged the detention facility operator "and/or Securus were aware that they were operating a system that captured and recorded confidential attorney-client communications." Order at 13 (citing Complaint ¶ 21, *Huff*, No. 17-2320-JAR-JPO (D. Kan. June 1, 2017), 2017 WL 11448922. The Court noted that this language "would satisfy the 'conscious objective' standard described in *In re Pharmatrak*." Order at 13 (quotations omitted). The SAC similarly satisfies this "conscious objective" threshold.

Plaintiffs allege that "Securus was aware or was willfully blind to the fact that it operated a system in Maine that intercepted, recorded and distributed calls between inmates and their attorney wherein inmates sought and/or received legal advice."[7] To support this, the SAC alleges that over 800 calls containing attorney-client privileged communications were recorded by Securus at Maine jails and prisons,[8] and that Securus has a history of being sued for recording privileged calls.[9] These allegations form the factual basis for the SAC's allegation that Securus "was aware that the system it operated in Maine would continue intercepting, recording and distributing calls between inmates and their attorneys wherein inmates sought and/or received legal advice."[10] The SAC lays out more directly that the sheer number of privileged calls Securus recorded shows that "Securus was either aware of the fact that its system repeatedly failed and recorded

---

[7] SAC § ¶ 1.
[8] SAC ¶¶ 2, 25-26.
[9] SAC ¶¶ 3, 18.
[10] SAC ¶¶ 5, 21.

3

communications in violation of the Wiretap Act, or was willfully blind to that fact."[11] These allegations, taken together, sufficiently plead the intent element of the Wiretap Act violations that form the basis of Plaintiffs' case.

Securus makes much of the distinction between the scienter requirements of "willful" and "intentional," *see* Opp'n at 11. This analysis is misplaced because the SAC does not allege that Securus' conduct was willful, but rather alleges "Securus was either aware of the fact that its system repeatedly failed and recorded communications in violation of the Wiretap Act, or was *willfully blind* to that fact."[12] Willful blindness—distinct from willfulness—is a method of pleading intentional or knowing conduct, since a defendant's state of mind often cannot be discerned directly, especially prior to discovery. *See, e.g., United States v. Griffin*, 524 F.3d 71, 79 n.6 (1st Cir. 2008) (stating that "[t]he circuits are uniform in approving willful blindness [jury] instructions for specific intent criminal offenses"); 2019 D. Me. Pattern Crim. Jury Instr. § 2.16, "Willful Blindness" As a Way of Satisfying "Knowingly").

## II. The Second Amended Complaint is Not Futile.

As it did in its Motion to Dismiss, Securus argues that the SAC is futile because it does not anticipatorily counter certain affirmative defenses Securus now raises. Affirmative defenses can serve as the basis of dismissal only where "'(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" *Nisselson v. Lernout*, 469 F. 3d 143, 150 (1st Cir. 2006) (quotations omitted); *Blackstone Realty*, 244 F.3d at 197 (stating that dismissal based on an affirmative defense is appropriate only where "review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must

---

[11] SAC ¶ 22.
[12] SAC ¶ 22 (emphasis added).

'leave no doubt' that the plaintiff's action is barred by the asserted defense."); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (noting that futility analysis on a motion to amend "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion"). Securus has not raised any affirmative defenses that meet this standard.

A *prima facie* case under the Wiretap Acts does not require the plaintiff to affirmatively plead they did not waive the privilege at issue. *See In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 23 (1st Cir. 2003) ("[w]e think, at least for the consent exception under the ECPA in civil cases, that it makes more sense to place the burden of showing consent on the party seeking the benefit of the exception, and so hold.") Contrary to Securus' assertion, lack of consent or waiver is not an element of the Wiretap Acts. In fact, if a plaintiff were required to plead that they followed certain procedures to show they did not consent, those procedures could be shielded from scrutiny.[13]

Further, that Securus purportedly screens out some privileged calls is immaterial to the question of intent under the Wiretap Acts, or to the question of whether they are plausibly liable for their failure to screen out other privileged calls. The procedures through which Securus purportedly screens out privileged calls, whether those procedures were effective in screening out the privileged calls, whether those procedures allow for a valid wavier and whether Plaintiffs followed those procedures are among the core factual questions of this matter. That the parties disagree with regard to these facts and as to what constitutes valid waiver, is precisely what discovery and motion practice will address.[14]

---

[13] Under Securus' suggested standard, a recorded party would have no opportunity to challenge the validity of those procedures because they would be required to assert, even prior to discovery, that they satisfied any particularities of the recording party's requirements—no matter how complex, onerous, or akin to a glorified game of Simon Says—in order to survive a motion to dismiss. This cannot be the law, and because consent and/or waiver is an affirmative defense, it is not.

[14] On this point, Plaintiffs note that Securus twice misquotes the SAC, omitting "purportedly" when citing to ¶ 20 of the SAC and thus materially changing the meaning of the allegations contained therein. *See* Opp'n at pp. 7, 8.

### III. Securus Does Not Fall Under the Exceptions to the Wiretap Acts.

The liability exception for equipment used by an "investigative or law enforcement officer in the ordinary course of his duties," (otherwise known as the "business extension exception") in the Federal Wiretap Act does not immunize Securus' conduct. That exception has two prongs, exempting from liability a provider that: (i) furnishes the equipment to the subscriber "in the ordinary course of its business," and (ii) that the subscriber then uses "in the ordinary course of its business." 18 U.S.C. § 2510(4); *Huff v. CoreCivic, Inc.*, No. 17-2320, 2018 WL 1175042 at *3 (D. Kan. Mar. 5, 2018). Securus argues that it is immunized because it is an instrumentality of county officials. This may satisfy the first prong, however, Securus ignores the second prong which requires the equipment be used in the ordinary course of its business—a prong Securus fails.

In *Huff*, the court carefully considered the meaning of "ordinary course of business" as it was used in the business extension exception, concluding that an action "is taken in the ordinary course of business if it is a routine activity of the business in furtherance of a legitimate business goal." *Huff v. CoreCivic*, 2018 WL 1175042 at *3 (citations omitted). Though Plaintiffs agree that a jail has a legitimate interest in recording calls in order to maintain security, the court in *Huff* correctly concluded that this interest "does not place all recordings of inmate phone calls within the business extension exception." *Id.* at *4. Moreover, neither the SAC nor the complaint in *Huff* allege that the recording of attorney-client calls furthered the security or public safety of the jail.[15] The court in *Huff* found that "[b]ecause the facts as alleged in Plaintiffs' Complaint do not reflect that the attorney-client recordings furthered a legitimate business interest, the Court finds that the recordings at issue were not made in the ordinary course of CoreCivic's business, and that the

---

[15] Securus has asserted that the general recording of calls is a legitimate business purpose. However, this is not the standard. As noted below, the Court in *Huff* found that the business extension exception considers not the jail's interest in recording generally but rather whether there is legitimate interest in recording *privileged calls*.

business exception does not apply." *Huff* at *4. The SAC similarly has no allegations to which Securus could point to assert that attorney-client recordings further a legitimate business interest. This is because there is simply no legitimate business interest in violating attorney-client privilege, and doing so is therefore outside the "ordinary course of business."[16]

Just as it did with the business extension exception, Securus ignores a crucial portion of Maine's Wiretap Act to argue that the Act does not apply to its conduct. The Maine Wiretap Act exempts individuals "carrying out practices otherwise permitted by this chapter." Securus assumes without argument that its recording of attorney-client communication is authorized. However, a review of Maine's Wiretap Act shows that recording of attorney-client communications is specifically not permitted. The investigative officer and jail investigative officer exemptions, 15 M.R.S. § 712(2)-(3), by their plain language "[do] not authorize any interference with the attorney-client privilege." The drafters of the Maine Wiretap Act were so concerned with ensuring the sanctity of the attorney-client privilege that even the act's safe harbor provisions made clear that the attorney-client privilege shall not be interfered with.[17]

In sum, the SAC provides sufficient factual allegations to state a claim against Securus for violation of the Wiretap Acts. Plaintiffs' claims are not futile, nor are they subject to dismissal based on any affirmative defense raised. The Motion for Leave to Amend should therefore be granted.

---

[16] Securus' final argument regarding Maine's exception, 15 M.R.S. § 709(3), fails for the same reasons the business extension exception does. Maine's exception pointedly uses substantially similar language, exempting devises used in the "ordinary course of business" There is no reason to believe that recording attorney-client communications is not within the ordinary course of business for the purpose of the Federal Wiretap Act but would be within the ordinary course of business for the purposes of Maine's Wiretap Act. *See Griffin v. Griffin*, 92 A.3d 1144, 1150-51 (noting that Maine courts should interpret the Maine Wiretap Act in the context of cases interpreting the Federal Wiretap Act).

[17] The third exception in the Maine Wiretap Act, 16 M.R.S. § 712(1), fails for the same reason the business extension exception does. That exception applies only to recordings "in the normal course of employment while engaged in any activity which is a necessary incident to the rendition of service…" Like above, *supra note* 16, it is difficult to imagine that recording attorney-client communications is not within the ordinary course of business for the purpose of the Federal Wiretap Act but would be in "the normal course of business" for the purposes of Maine's Wiretap Act.

Dated: June 15, 2021

                Respectfully Submitted,

                /s/ Peter Mancuso
                Peter Mancuso, Esq
                Andrew Schmidt, Esq.
                Andrew Schmidt Law, PLLC
                97 India St.
                Portland, Maine 04101
                (207) 619-0884
                Peter@maineworkerjustice.com

                Benjamin N. Donahue
                Hallett, Whipple & Weyrens, P.A.
                Six City Center
                P.O. Box 7508
                Portland, Maine 04112-7508
                Tel - 207.775.4255
                Fax - 207.775.4229
                www.hww.law
                bdonahue@hww.law

                *Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will automatically send notice of such filing to all counsel of record.

Dated: June 15, 2021

                                              /s/Peter Mancuso
                                              Peter Mancuso
                                              Andrew Schmidt Law, PLLC
                                              97 India St.
                                              Portland, Maine 04101
                                              207-619-0884
                                              Peter@MaineWorkerJustice.com

                                              *Attorneys for the Plaintiffs*