# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **JEREMY PRATT, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   **1:20-cv-00295-JDL** |
| | ) |
| **SECURUS TECHNOLOGIES,** | ) |
| **INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

This case involves allegations that the Defendant, Securus Technologies, Inc., which provides telephone services to several Maine jails, violated federal and state wiretap laws when it recorded attorney-client phone calls made by inmates at those jails. The Plaintiffs are Attorneys Jeremy Pratt, Robert J. Ruffner, and John W. Tebbetts, as well as Steven Belleau and Matthew Perry, both of whom were formerly detained in Maine jails. I previously granted Securus's motion to dismiss the Plaintiffs' First Amended Complaint on the ground that it did not allege sufficient factual matter to plausibly establish that Securus acted intentionally, as is required for liability under the wiretap laws (ECF No. 50). The Plaintiffs have filed a Motion for Leave to File a Second Amended Complaint (ECF No. 51), which Securus opposes. For the reasons that follow, I deny the motion.

## I.  BACKGROUND

The Plaintiffs filed their First Amended Complaint (ECF No. 21) on November 6, 2020, asserting claims under the Federal Wiretap Act, 18 U.S.C.A. §§ 2510-2523

(West 2021), and Maine's Interception of Wire and Oral Communications Act (the "Maine Wiretap Act"), 15 M.R.S.A. §§ 709-713 (West 2021), as well as class allegations. Securus then moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), asserting that the complaint did not state a claim under the federal or state wiretap laws (ECF No. 25). On April 30, 2021, I issued an order granting the Motion to Dismiss (ECF No. 50).[1]

In their response to the Motion to Dismiss, the Plaintiffs had requested leave to amend if I concluded that their First Amended Complaint did not state a claim. Accordingly, when I granted the Motion to Dismiss, I left the dismissal "subject to the Plaintiffs filing a motion for leave to file a second amended complaint within 10 days." ECF No. 50 at 15. On May 10, 2021, the Plaintiffs filed their Motion for Leave to File a Second Amended Complaint (ECF No. 51). A hearing on that motion was held on August 31, 2021.

## II. PROPOSED SECOND AMENDED COMPLAINT

The following facts are drawn from the Plaintiffs' proposed Second Amended Complaint, as well as from two state and county written policies.[2]

---

[1] Securus had also moved to dismiss the First Amended Complaint for lack of jurisdiction, on the ground that the Plaintiffs lacked standing. I rejected that argument.

[2] I previously took judicial notice of the policies, which are Maine Department of Corrections Policy Number 21.3, "Prisoner Telephone System" (last revised June 13, 2019) (ECF No. 26-1), and the Aroostook County Jail Inmate Handbook (last revised Sept. 2020) (ECF No. 26-2). *See Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) ("We may augment [the facts set forth in the complaint] . . . with . . . facts susceptible to judicial notice."). Plaintiffs have not disputed the existence of these written policies or their accuracy.

Securus contracts with jails and prisons, including the Aroostook County Jail and other Maine jails, to provide telecommunications services for prisoners. Pursuant to those contracts, Securus records the prisoners' calls.

The proposed Second Amended Complaint states that "Securus purportedly exempts certain calls from its program of intercepting, recording and distributing all inmates' calls" but that "Securus requires attorneys and inmates to jump through a series of hoops to avoid having their calls recorded."  ECF No. 51-1 ¶ 20.  The Aroostook County Jail Handbook states, "All calls except to attorneys will be monitored and recorded."  ECF No. 26-2 at 9.  It also provides, "Attorney phone numbers are unrecorded.  Please provide [a jail officer] with your attorney's number to ensure it is on the private call list."  *Id.*  Similarly, a Maine Department of Corrections policy states, "All telephone calls made on the prisoner phone system, except for privileged calls, may be recorded."  ECF No. 26-1 at 10.  It also sets forth the procedures for a prisoner to designate "names and numbers to which the prisoner wishes to make legal telephone calls."  *Id.* at 4.  However, the proposed Second Amended Complaint alleges that "Plaintiff Belleau was never given any handbook, direction, or instructions of any kind . . . that told him how to block the recording of his calls with his attorney" while he was in the Aroostook County Jail.  ECF No. 51-1 ¶ 52.  The proposed Second Amended Complaint does not mention any other instance in which an inmate was not provided this information.

The Plaintiffs assert that "since July 2019 Securus has recorded over 800 calls between attorneys and their inmate clients at the Androscoggin, Aroostook, Franklin and Somerset county jails, encompassing over 150 inmates and 30 law firms and/or

attorneys." *Id.* ¶ 25.  In the proposed Second Amended Complaint, the Plaintiffs state that "the sheer number" of attorney-client calls that Securus has recorded in Maine jails "demonstrates that Securus'[s] procedures for exempting calls [from recording] are either: (i) inadequate[] to the parties that needed to complete them; or (ii) ineffective even when satisfied." *Id.* ¶ 21.  The proposed Second Amended Complaint also alleges that Securus "was aware well prior to the events giving rise to this action that the system it uses routinely intercepts . . . calls protected by the attorney-client privilege." *Id.* ¶ 19.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) "provides that a party may amend its pleading with 'the court's leave,' and that '[t]he court should freely give leave when justice so requires.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) (alteration in original) (quoting Fed. R. Civ. P. 15(a)).  However, the court may deny leave to amend on the ground, among others, of "futility of amendment."  *Id.* at 56 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

"In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."  *Id.*  Under that standard, the court must determine whether the proposed amended complaint "contain[s] sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Courts apply a "two-pronged approach"

to assess a complaint's adequacy, *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## IV.  DISCUSSION

Securus argues that the proposed Second Amended Complaint fails to state a claim under the Federal Wiretap Act, 18 U.S.C.A. §§ 2510-2523, or the Maine Wiretap Act, 15 M.R.S.A. §§ 709-713—and is therefore futile—because (1) it does not plausibly allege that Securus acted intentionally, and (2) Securus's conduct falls under exceptions to liability within the wiretap statutes. Because, as I will explain, the proposed Second Amended Complaint does not plausibly allege that Securus acted intentionally, I do not reach Securus's second argument.

### 1.  **Legal Framework**

As I explained at some length in my previous Order, both federal and Maine wiretap laws prohibit the intentional interception of telephone conversations.[3] *See*

---

[3] I regard the statutory meaning of the two laws' intentional state-of-mind requirements as "consistent." *Thayer Corp. v. Reed*, No. 2:10-CV-00423-JAW, 2011 WL 2682723, at *6 (D. Me. July 11,

18 U.S.C.A. § 2511(1)(a); 15 M.R.S.A. § 710(1).  The First Circuit has clarified that the intent requirement "means more than that one voluntarily engaged in conduct or caused a result." *In re HIPAA Subpoena*, 961 F.3d 59, 65 (1st Cir. 2020) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003)).  For purposes of the Federal Wiretap Act, "[a]n 'intentional' state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's *conscious objective*."  *Id.* (alteration in original) (emphasis added) (quoting *Pharmatrak*, 329 F.3d at 23).  So, an interception "is not intentional if it is the product of inadvertence or mistake," *id.* (quoting *Pharmatrak*, 329 F.3d at 23), and "neither negligence nor gross negligence satisfies the intent element," *id.* at 66.  Similarly, it is not enough to show that a defendant "should have known" about the prohibited interceptions.  *Id.*

The First Circuit has recognized, however, that knowledge does matter because the conscious-objective test may be satisfied by "ample circumstantial evidence" indicating that a defendant was aware of interceptions of protected conversations and yet took no remedial action.  *Id.* at 68 (quoting *Abraham v. Cnty. of Greenville*, 237 F.3d 386, 392 (4th Cir. 2001)).  Similarly, other courts have recognized that "interceptions may be considered intentional where a defendant is aware of [a] defect causing interception and takes no remedial action."  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (concluding that plaintiffs had

---

2011).  The Maine Wiretap Act also prohibits "knowingly intercept[ing]" wire communications, 15 M.R.S.A. § 710(1), but this prohibition does not affect my analysis because, for reasons I will address, the proposed Second Amended Complaint does not plausibly allege that Securus acted knowingly.

sufficiently alleged intent by stating that the defendant had been notified of the problem but failed to fix it); *Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 935 (N.D. Ill. 2006) ("It is enough to be aware that such interception is occurring and to fail to stop it.").

In my previous Order, I determined that the Plaintiffs' First Amended Complaint did "not plausibly allege that Securus's 'conscious objective' was to record attorney-client calls," as required for liability under the wiretap laws. ECF No. 50 at 14 (quoting *Pharmatrak*, 329 F.3d at 23). I noted that the First Amended Complaint did "not allege that Securus was actually aware that it was intercepting and recording attorney-client calls." *Id.* Instead, in their First Amended Complaint, the Plaintiffs had asserted merely that "Securus intercepts and recorded inmates' calls," ECF No. 21 ¶ 15, and that it "failed to screen out [attorney-client calls] from those calls it recorded," *id.* ¶ 17. The Plaintiffs argued that Securus's intention to record calls made from jail phones generally was enough to satisfy the wiretap laws' state-of-mind requirement. I rejected that argument, which I determined to be inconsistent with First Circuit precedent and the Federal Wiretap Act's legislative history. I explained that "intent must be assessed with respect to the communications that are actually intercepted, rather than transferred from the defendant's intent to intercept communications that the defendant is permitted to record." ECF No. 50 at 12. I concluded that, under that standard, the First Amended Complaint did not "contain non-conclusory allegations which, if proven, would show that Securus's conduct was 'intentional' within the meaning of the Federal Wiretap Act." *Id.* at 14.

2.      **Sufficiency of the Proposed Second Amended Complaint**

In their proposed Second Amended Complaint and the motion in support of it, the Plaintiffs have adjusted their arguments to fit the legal framework that I described in my previous Order, and the factual allegations in their proposed Second Amended Complaint come closer to the mark.  Nevertheless, for reasons that I will explain, the proposed Second Amended Complaint falls short of plausibly alleging that Securus intentionally recorded attorney-client calls.

I begin with the common ground between the parties.  As I noted in my previous Order, the written policies that Securus submitted to the Court demonstrate that the jails bear primary responsibility for providing inmates with information about protecting their privileged phone calls.[4]  The Plaintiffs do not dispute this point. Instead, they argue that the factual allegations in the proposed Second Amended Complaint are sufficient to plausibly show that Securus knew that its system regularly recorded privileged calls but took no action to remedy that problem.

The Plaintiffs contend that Securus's knowledge can be inferred from two factual allegations in the proposed Second Amended Complaint: (1) Securus has previously been sued four times in other jurisdictions for allegedly unlawfully

---

[4] In contrast to the Aroostook County Jail policy, the Department of Corrections policy that Securus submitted to the Court does not appear to apply directly to Maine's county jails.  However, the Department of Corrections policy is relevant because that agency establishes standards for the operation of county jails.  *See* 34-A M.R.S.A. § 1208 (West 2021); 03-201-001 Me. Code R. § IIb[a] (LexisNexis 2021) ("The right of consultation with an attorney . . . shall include confidential . . . phone communications . . . .").

recording attorney-client calls,[5] and (2) Securus recorded "over 800" attorney-client calls in Maine since July 2019, which "encompass[es] over 150 inmates."  ECF No. 51-1 ¶ 25.  Thus, the question is whether these allegations, viewed together and in light of the fact that the jails have written policies for providing inmates with a mechanism to protect their privileged calls, are sufficient to plausibly allege that Securus's conscious objective was to record attorney-client calls, a mental state that may be inferred from knowledge of the problem combined with a lack of remedial action.[6]  For the reasons I will explain, I conclude that they are not.

First, whether Securus had previously been sued by prisoners in other states for allegedly recording attorney-client calls, without additional information, is not significant.  The Plaintiffs do not allege that any of the four prior lawsuits resulted in a judicial finding or a judgment determining that Securus had unlawfully recorded attorney-client calls.  In addition, the mere existence of prior lawsuits based on the same alleged result—the recording of privileged calls—sheds no light on how and why the recordings occurred in those cases or whether the recordings were unlawful.  That prisoners or former prisoners in other states have alleged that their attorney-client calls were unlawfully recorded does not, without more information, provide a

---

[5] Specifically, the Plaintiffs cite the following cases: *Austin Laws. Guild v. Securus Techs., Inc.*, No. 1:14-cv-00366 (W.D. Tex.); *Romero v. Securus Techs., Inc.*, No. 3:16-cv-01283 (S.D. Cal.); *Crane v. Corr. Corp. of Am.*, No. 4:16-cv-00947 (W.D. Mo.); and *Huff v. Corecivic, Inc.*, No. 2:17-cv-02320 (D. Kan.).

[6] Securus contends that the Plaintiffs do not provide any factual basis for their allegation that Securus was aware that its system regularly recorded attorney-client calls and that that allegation is based solely "upon information and belief" without any factual support.  However, "allegations based upon 'information and belief' survive an analysis under [Rule 12(b)(6)] where . . . the belief is based on factual information that makes the inference of culpability plausible."  *JT IP Holding, LLC v. Florence*, No. 20-cv-10433, 2020 WL 5217118, at *7 (D. Mass. Sept. 1, 2020).

reasoned basis to infer that Securus was on notice that it was unlawfully recording attorney-client calls in Maine.

Second, the raw number of 800 or more attorney-client calls alleged by the proposed Second Amended Complaint to have been unlawfully recorded between July 2019 and August 2020 does not permit the inference that Securus acted intentionally. Without any additional information about the total number of attorney-client calls made during that period, the allegation that 800 or more attorney-client calls were wrongfully recorded provides a numerator without a denominator and does not indicate whether the recordings represented a minor glitch or a systemic problem. Persons held in jail have reason to be in frequent communication with their attorneys, and the Court is left to guess whether the number of 800 or more attorney-client calls is factually significant.  The Second Amended Complaint does not contain any allegations that provide the necessary context to determine whether the number of unlawfully recorded calls alleged here suggests that Securus knew that something was amiss.

At oral argument, the Plaintiffs asserted that the sheer number of attorney-client calls that Securus allegedly recorded suggests that something went wrong and that the Court should permit the case to advance to discovery for that reason alone. The First Circuit has explained that "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case," *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013), and it is certainly fair to think that Securus possesses some information (or, alternatively, a meaningful absence of information) that might assist the Plaintiffs in assessing

whether Securus knew that it was systematically recording attorney-client calls.  But the Plaintiffs' assertion that discovery would "provide the missing link," *id.* at 105 (quoting *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012)), is belied by their apparent failure to pursue other areas of investigation that remain available to them.  For example, the Plaintiffs could have asked other former or current inmates about whether they had been informed of the number-protection procedures set forth in the jails' written policies.  Moreover, Maine provides a mechanism for obtaining public records that might assist the Plaintiffs' investigation: a request under the Maine Freedom of Access Act.  *See* 1 M.R.S.A. § 408-A (West 2021); 34-A M.R.S.A. § 1212 (West 2021); *Anctil v. Dep't of Corr.*, 2017 ME 233, ¶¶ 3-7, 175 A.3d 660, 662-63 (discussing the procedure for requesting documents under the Maine Freedom of Access Act).  The public records pertaining to the jails' policies and practices might reveal how and why more than 800 attorney-client calls were recorded in the relevant timeframe.

The unlawful interception and recording of even a single attorney-client phone calls undermines society's important interest in encouraging honest and frank communication between attorneys and their incarcerated clients.  However, the wiretap laws do not offer a remedy for the accidental or negligent interception of such calls.  For the Plaintiffs to proceed on their Second Amended Complaint, they must plausibly allege facts that, if proven, would establish that Securus intentionally recorded attorney-client phone calls.  Because the proposed Second Amended Complaint does not "contain sufficient factual matter to state a claim to relief that is

plausible on its face," *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Grajales*, 682 F.3d at 44), the Plaintiffs' motion must be denied.

## V. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 51) is **DENIED**. A dismissal for failure to state a claim "is with prejudice unless the order of dismissal explicitly says otherwise." *Adames v. Fagundo*, 198 F. App'x 20, 21 (1st Cir. 2006); *accord Foss v. Marvic Inc.*, 994 F.3d 57, 62 n.6 (1st Cir. 2021). "Dismissal with prejudice is appropriate where the defect in the claim is irremediable, such as where there is no basis in law for this plaintiff to bring this particular claim against this defendant (even if properly pleaded), . . . and refiling could do nothing to cure the infirmity." *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 279, 288 (D. Mass. 2015). In contrast, "[c]omplaints meriting dismissal without prejudice include those that fail to comply with some pleading requirement, but that if properly pleaded and filed could present a cognizable claim." *Id.*; *see also López-Rivera v. Hosp. Auxilio Mutuo, Inc.*, 247 F. Supp. 3d 185, 189 (D.P.R. 2017). The First Amended Complaint (ECF No. 21) is **DISMISSED without prejudice**.

**SO ORDERED.**

**Dated this 2nd day of November, 2021.**

                        **/s/ JON D. LEVY**
                    **CHIEF U.S. DISTRICT JUDGE**